## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KRISTEN RIFFLE, individually and on behalf of all others similarly situated, | Case No. 3:25-cv-50131 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| IGLOO PRODUCTS CORP., | |
| Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiff Kristen Riffle ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Igloo Products, Corp. ("Igloo" or "Defendant") and alleges on personal knowledge, investigation of counsel, and information and belief as follows:

### INTRODUCTION

1.      This is a nationwide class action brought by Plaintiff on behalf of herself and other similarly situated consumers who purchased an Igloo 90 Qt. Flip & Tow Rolling Cooler for personal or household use and not for resale and that have the following model numbers (collectively, the "Noticed Products"[1]): 34143; 27019; 34202; 34241; 34389; 34424; 34488; 34506; 34527; 34547; 34553; 34577; 34578; 34591; 34608; 34619; 34624; 34689; 34724; 34734; 34750; 34752; 34775; 34776; 34789; 34799; 34800; 34818; 34841; 34844; 34869; 34993; 34999; 35003; 35019; 35044; 35045; 35052; 35053; 35054; 35065; 49870; 49928; 49937; 49938; 50680.

2.      Igloo is a well-established corporation known nationwide for its design, production, manufacture, distribution, and importation of ice chests, drink containers, and

---

[1] Plaintiff reserves the right to amend or modify the definition of the Noticed Products based on information learned in discovery and further investigation.

supporting accessories, including the Noticed Products.

3.    Igloo sells its products, including the Noticed Products, at Costco, Target, Academy, Dick's and other stores nationwide, and online at Amazon.com, Igloocoolers.com, and other websites nationwide.

4.    On February 13, 2024, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 1,060,000 of the Noticed Products sold in the United States because the tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards."[2] The Noticed Products were sold at Costco, Target, Academy, Dick's and other stores nationwide, and online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140.[3]

5.    By the time the recall was issued, the CPSC had received 12 reports of incidents of fingertip injuries, including fingertip amputations, bone fractures, and lacerations.[4]

6.    In its Recall Notice, Igloo advises that consumers should immediately stop using the recalled coolers and contact Igloo for a free replacement handle.[5]

7.    As a result of Defendant's misconduct, misrepresentations and omissions, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

8.    Plaintiff and the Class bring this suit for economic damages they sustained as a result. Given the massive quantities of the Noticed Products sold nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining needed relief for those affected.

---

[2] https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards (last accessed March 21, 2025).
[3] *Id.*
[4] *Id.*
[5] *Id.*

**PARTIES**

11.     Plaintiff Kristen Riffle is and was at all times relevant to this matter a citizen of the State of Illinois residing in Byron, Illinois.

12.     Defendant Igloo Products Corporation is incorporated in Katy, Texas with its headquarters located at 777 Igloo Road, Katy, Texas 77494. Defendant operates nationwide and sells its products nationwide, including in Illinois.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Defendant because the claims asserted in this complaint arise from Defendant's conduct with this District. Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in Illinois, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within Illinois related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period. At that time, Defendants were engaged in business activities in Illinois.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a

substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in Illinois. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contracts with this District, and otherwise purposefully avails itself of the markets in this District through the promotion, sale, and marketing of the Noticed Products in this District. Venue is also proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

16.     Igloo is an American manufacturer of ice chests, drink containers, and supporting accessories and touts itself as the "go-to-brand for consumers who work hard and play harder" and as "the most recognizable brand of ice chests in the USA!"[6] Igloo claims its products are "built to exceed the needs and increase the enjoyability of road-trippers, campers, picnickers, parents, athletes, frontline workers, corporate warriors, you name it."[7]

17.     Specifically, Igloo designed, developed, manufactured, marketed, and sold a variety of rolling coolers from January 2019 through January 2025. Unbeknownst to consumers, these rolling coolers are defective and dangerous.

18.     On February 13, 2024, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 1,060,000 of the Noticed Products sold in the United States because the tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards."[8]  The Noticed Products were sold at Costco, Target, Academy, Dick's and other stores nationwide, and online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140.

---

[6] https://www.igloocoolers.com/pages/about-igloo (Last accessed March 21. 2025).
[7] Id.
[8] https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards (Last accessed March 21, 2025).

19.     The Noticed Products include the following cooler models and date codes:[9]

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 34143 | LATITUDE 90 ROLLER | 07/2021 – 12/2023 |
| 27019 | MAXCOLD LATITUDE 90 ROLLER POWERADE | 11/2020 – 12/2023 |
| 34202 | MAXCOLD 90 ROLLER | 07/2021 – 12/2023 |
| 34241 | LATITUDE 90 ROLLER MAXCOLD | 07/2021 – 12/2023 |
| 34389 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34424 | LATITUDE 90 ROLLER | 10/2019 – 12/2023 |
| 34488 | LATITUDE 90 ROLLER MAXCOLD | 03/2019 – 12/2023 |
| 34506 | LATITUDE 90 ROLLER | 08/2021 – 12/2023 |
| 34527 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34547 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34553 | LATITUDE 90 ROLLER MAXCOLD | 09/2019 – 12/2023 |
| 34577 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34578 | LATITUDE 90 ROLLER | 09/2019 – 12/2023 |
| 34591 | LATITUDE 90 ROLLER MAXCOLD | 11/2019 – 12/2023 |
| 34608 | LATITUDE 90 ROLLER MAXCOLD | 12/2019 – 12/2023 |
| 34619 | LATITUDE 90 ROLLER | 01/2020 – 12/2023 |
| 34624 | LATITUDE 90 ROLLER MAXCOLD | 01/2020 – 12/2023 |
| 34689 | MAXCOLD LATITUDE 90 ROLLER | 03/2020 – 12/2023 |
| 34724 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |

---
[9] *Id.*

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 34734 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34750 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34752 | MAXCOLD LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34775 | LATITUDE 90 ROLLER | 09/2020 – 12/2023 |
| 34776 | ECOCOOL LATITUDE 90 ROLLER MAXCOLD | 10/2020 – 12/2023 |
| 34789 | MAXCOLD LATITUDE 90 ROLLER | 11/2020 – 12/2023 |
| 34799 | LATITUDE 90 ROLLER | 12/2020 – 12/2023 |
| 34800 | MAXCOLD LATITUDE 90 ROLLER | 01/2021 – 12/2023 |
| 34818 | MAXCOLD LATITUDE 90 ROLLER | 03/2021 – 12/2023 |
| 34841 | LATITUDE 90 ROLLER MAXCOLD | 05/2021 – 12/2023 |
| 34844 | SPORTSMAN 90 LATITUDE ROLLER | 04/2021 – 12/2023 |
| 34869 | LATITUDE 90 ROLLER | 06/2022 – 12/2023 |
| 34993 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 34999 | LATITUDE 90 ROLLER | 08/2023 – 12/2023 |
| 35003 | MAXCOLD 90 QUART ECO ROLLER | 06/2023 – 12/2023 |
| 35019 | MAXCOLD LATITUDE 90 ROLLER | 07/2023 – 12/2023 |
| 35044 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35045 | MAXCOLD LATITUDE 90 | 10/2023 – 12/2023 |
| 35052 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35053 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35054 | LATITUDE 90 ROLLER | 10/2023 – 12/2023 |
| 35065 | LATITUDE 90 ROLLER MAXCOLD | 11/2023 – 12/2023 |
| 49870 | LATITUDE 90 ROLLER | 09/2018 – 12/2023 |
| 49928 | LATITUDE 90 ROLLER | 08/2019 – 12/2023 |
| 49937 | LATITUDE 90 | 08/2018 – 12/2023 |

| Model/SKU # | Description | Date Codes |
|---|---|---|
| 49938 | ROLLER | 09/2018 – 12/2023 |
| | LATITUDE 90 ROLLER | |
| 50680 | MAXCOLD | 09/2023 – 12/2023 |
| | LATITUDE 90 QUART | |

20.     The manufacturing defect renders the Noticed Products unfit for the ordinary purpose for which they are used: a safe and reliable method for storing and transporting items that need to remain cool.

21.     As a result of the injury risks to operators associated with the use of the Noticed Products, by Defendant's own admission in its Recall Notice, the Noticed Products have been rendered entirely worthless.

22.     Specifically, Defendant's recall notice states that "[c]onsumers should immediately stop using the recalled coolers and register for a free tow replacement handle."[10]

23.      Therefore, the Noticed Products are worthless because they cannot be used without risk of serious injury.

24.      Indeed, reasonable consumers are unlikely to use an object that carries a risk of amputation where that object ordinarily – in this case, a rolling cooler – does not carry that risk.

25.     The only choice offered to consumers by Igloo is to participate in the recall and order a free replacement handle.[11]

26.     In order to remedy the defect with these coolers, Igloo is only offering a free replacement handle to consumers after they register with the company.[12] On its recall page,

---

[10] https://igloo90qtrecall.expertinquiry.com/us-home?lang=en (Last accessed March 21, 2025).
[11] Id.
[12] Id.

however, Igloo provides no information for consumers about how they need to replace the handle on their Noticed Products nor does it provide any information about how the replacement handle remedies the defective coolers.[13]

27.    As a result of Defendant's conduct in connection with the design, manufacturing, distribution, recall and repair, Plaintiff and Class Members paid a price premium and sustained economic injuries.

A.    **Plaintiff Riffle**

28.    Plaintiff Kristen Riffle resides, and at all relevant times herein has resided, in Byron, Illinois.

29.    In or around July of 2022, Plaintiff purchased the Igloo Latitude 90 Quart Rolling Cooler online from Dick's Sporting Goods for approximately $120 for her personal use.

30.    Plaintiff wanted to purchase a safe, reliable, quality cooler from a well-known and recognizable brand.

31.    Before purchasing the Noticed Product, Plaintiff reviewed information about the Noticed Product on the Noticed Product's packaging and labeling, including safety information.

32.    Defendant did not include on its packaging, labeling, or product inserts that the Noticed Product contained misinformation regarding the safety hazard the handle poses.

33.    Plaintiff relied on Defendant's omissions in purchasing Defendant's Noticed Product.

34.    Plaintiff also relied on Defendant's misrepresentations in purchasing Defendant's Noticed Product.

35.    Plaintiff has not used the Noticed Product since the recall advised that it is unsafe

---

[13] *See id.*

for use and that it should not be used.

36.     Accordingly, the Noticed Product is worthless.

37.     Plaintiff also did not receive the benefit of her bargain because Plaintiff does not trust that the replacement handle has corrected the defect.

38.     Had Plaintiff known or otherwise been made aware of the defect in the Noticed Product, she would not have purchased it or would have paid significantly less for it. At a minimum, due to Defendant's omission of the manufacturing defect, Plaintiff paid a price premium for the Noticed Product, which she would not have paid had she known the truth.

39.     As a result of Defendant's conduct, Plaintiff has suffered economic damages because the Noticed Product that she purchased is now worthless or substantially diminished in value.

## ESTOPPEL FROM PLEADING AND
## TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

40.     Plaintiff and the members of the Class had no way of knowing about Defendant's conduct concerning the safety risks associated with the use of the Noticed Products.

41.     Prior to the recall, neither Plaintiff nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein. For these reasons, all applicable statutes of limitation have been tolled by the discovery rule concerning claims asserted by Plaintiff and the Class.

42.     Further, by failing to provide notice of the risks of malfunction or injury associated with the continued use of the Noticed products, Defendant concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the Class members.

43.     Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiff and Class members. Plaintiff and Class members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class members should be tolled.

44.     As a factual matter, Plaintiff did not learn about the manufacturing defect and injury risks until just prior to filing suit.  Once Plaintiff learned of it, she promptly acted to preserve her rights, filing this action. Defendant is estopped from asserting any statute of limitation defense that might otherwise apply to the claims asserted herein.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action on behalf of herself and the following Classes pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Specifically, the Class is defined as:

> **National Class:**  All persons in the United States who purchased the Noticed Products for personal use and not for resale during the Class Period.

In the alternative, Plaintiff brings this action on behalf of the following State Sub-Classes:

> **Multi-State Sub-Class (Implied Warranty Non-Privity) ("Multi-State Implied Warranty Sub-Class"):** All persons who purchased the Noticed Products for personal use and not for resale during the Class Period in the following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; and Wyoming.

> and

**Multi-State Sub-Class (Express Warranty) ("Multi-State Express Warranty Sub-Class"):** All persons who purchased the Noticed Products for personal use and not for resale during the Class Period in the following States: California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.

And

**Multi-State Sub-Class (Consumer Fraud Acts) ("Multi-State Consumer Fraud Acts Sub-Class"):** All persons who purchased the Noticed Products for personal use and not for resale during the Class Period in the following States: California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York or Washington[14].
And

**Illinois Sub-Class**: All persons in Illinois who purchased the Noticed Products for personal use and not for resale during the Class Period.

46.    Excluded from the Class and Sub-classes are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of the Defendant or any entity in which the Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for the Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members. The "Class Period" begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ends on the date of entry of judgment.

---

[14] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq*); Florida (Fla. Stat. §501.201, *et seq*.); Illinois (815 Ill. Comp. Stat. §505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §445.901, *et seq*.); Minnesota (Minn. Stat. §325F.67, *et seq*.); Missouri (Mo. Rev. Stat. §407.010, *et seq*.); New Jersey (N.J, Stat. §56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §§349 and 350); and Washington (Wash. Rev. Code §19.86.010, *et seq*.). Plaintiff Riffle has standing to represent the proposed Multi-State Consumer Fraud Acts Sub-class. Any challenge brought by Defendant regarding Plaintiff's standing to represent any proposed class should be deferred to the class certification stage because that is what Illinois law requires.

47.     Plaintiff reserves the right to amend the definition of the Class and Sub-classes if discovery or further investigation reveals that the Class and Sub-classes should be expanded or otherwise modified.

48.     **Numerosity.** Class and Sub-class Members are so numerous and geographically dispersed that joinder of all Class and Sub-class Members is impracticable. While the exact number of Class and Sub-class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class and Sub-class Members.[15] Moreover, the number of members of the Classes and Sub-class may be ascertained from Defendant's books and records. Class and Sub-class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

49.     **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class and Sub-class Members and predominate over any questions affecting only individual Class and Sub-class Members. These common legal and factual questions include, but are not limited to, the following:

a.   Whether the Noticed Products contain the defect alleged herein;

b.   Whether Defendant failed to appropriately warn Plaintiff and the Class and Sub-classes of the damage or injury that could result from the use of the Noticed Products;

c.   Whether Defendant failed to disclose to Plaintiff and the Class and Sub-classes that the cooler carries with it the risk of hand and finger injuries due to a defective handle;

d.   Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and the Class and Sub-classes.

---

[15] According to the CPSC Notice, more than *one million* units are affected by the recall. *See* https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards (Last accessed March 21, 2025).

e.  Whether Defendant promoted the Noticed Products with false or misleading statements of fact and material omissions;

f.  Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Noticed Products are deceptive, unfair, or misleading;

g.  Whether Defendant's actions and omissions violate Illinois law;

h.  Whether Defendant's representations are deceptive;

i.  Whether Defendant engaged in unfair or deceptive trade practices;

j.  Whether Defendant violated the state consumer protection statutes alleged herein;

k.  Whether Defendant's conduct violates public policy;

l.  Whether Plaintiff and putative members of the Class and Sub-classes have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

m.  Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class and Sub-classes in connection with selling the Noticed Products;

n.  Whether Plaintiff and members of the putative Class and Sub-classes are entitled to monetary damages and, if so, the nature of such relief; and

o.  Whether Plaintiff and members of the putative Class and Sub-classes are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

50.    **Typicality.** Plaintiff's claims are typical of those of the absent Class and Sub-class Members in that Plaintiff, and the Class and Sub-class Members each purchased and used the Noticed Products, and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes and Sub-class. Plaintiff and all members of the putative Class and Sub-classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Class and Sub-classes sustained monetary and

economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omissions regarding the safety of the Notice Products and the failure to provide an adequate remedy to aggrieved consumers.

51.     **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class and Sub-classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Class and Sub-classes.

52.     **Insufficiency of Separate Actions.** Absent a class action, Plaintiff and members of the Class and Sub-classes will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

53.     **Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes and Sub-classes, thereby making appropriate final injunctive relief, as described below, concerning the members of the Class and Sub-classes as a whole.

54.     **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

> a.  The damages suffered by each individual member of the putative Class and Sub-classes do not justify the burden and expense of individual prosecution

of the complex and extensive litigation necessitated by Defendant's conduct;

b.  Even if individual members of the Class and Sub-classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.  The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class and Sub-classes;

d.  Individual joinder of all members of the Class and Sub-classes is impracticable;

e.  Absent a Class, Plaintiff and members of the putative Class and Sub-classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

f.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Class and Sub-classes can seek redress for the harm caused by Defendant.

55.    In the alternative, the Class and Sub-classes may be certified for the following reasons:

a.  The prosecution of separate actions by individual members of the Class and Sub-classes would create a risk of inconsistent or varying adjudication concerning individual members of the Class and Sub-classes, which would establish incompatible standards of conduct for Defendant;

b.  Adjudications of claims of the individual members of the Class and Sub-classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class and Sub-classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class and Sub-class Members to protect their interests; and

c.  Defendant has acted or refused to act on grounds generally applicable to the members of the putative Class and Sub-classes, thereby making appropriate final and injunctive relief concerning the putative Classes and Sub-classes as a whole.

56.    In the alternative to those claims seeking remedies at law, Plaintiff and Class and Sub-class Members allege that no plain, adequate, and complete remedy exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as

equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(On Behalf of the Multi-State Implied Warranty Sub-Class and, alternatively, the Nationwide Class)**

57.     Plaintiff repeats and re-alleges the preceding allegations as though set forth fully herein.

58.     Plaintiff's individual claims are brought under the laws of the State in which she purchased her respective Noticed Product (Illinois). The claims of absent members of the Multi-State Implied Warranty Sub-Class and Nationwide Class are brought under the state's laws in which they purchased their Noticed Products and identified below.

    d.  Alaska Stat. §§ 45.02.314, *et seq.*;

    e.  Ark. Code Ann. §§ 4-2-314, *et seq.*;

    f.  Cal. Civ. Code §§ 1792, 1791.1, *et seq.* (the "Song-Beverly Act");

    g.  Colo. Rev. Stat. Ann. §§ 4-2-314, *et seq.*;

    h.  Conn. Gen. Stat. §§ 42a-2-314, *et seq.*;

    i.  Del. Code Ann. Tit. 6, §§ 2-314, *et seq.*;

    j.  D.C. Code §§ 28:2-314, *et seq.*;

    k.  Fla. Stat. §§ 672.314, *et seq.*;

    l.  Haw. Rev. Stat. §§ 490:2-314, *et seq.*;

    m. Ind. Code §§ 26-1-2-314, *et seq.*;

    n.  Kan. Stat. Ann. §§ 84-2-314, *et seq.*;

    o.  La. Civ. Code Ann. Art. 2520, *et seq.*;

    p.  Md. Code Ann., Com. Law §§ 2-314, *et seq.*;

q.  Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, *et seq.*;

r.  Mass. Gen. Laws ch. 106, §§ 2-314, *et seq.*;

s.  Mich. Comp. Laws Ann. §§ 440.2314, *et seq.*;

t.  Minn. Stat. §§ 336.2-314, *et seq.*;

u.  Miss. Code Ann. §§ 75-2-314, *et seq.*;

v.  Mo. Rev. Stat. §§ 400.2-314, *et seq.*;

w.  Mont. Code Ann. §§ 30-2-314, *et seq.*;

x.  Neb. Rev. Stat. Ann. §§ 2-314, *et seq.*;

y.  Nev. Rev. Stat. §§ 104.2314, *et seq.*;

z.  N.H. Rev. Stat. Ann. §§ 382-A:2-314, *et seq.*;

aa. N.J. Stat. Ann. §§ 12A:2-314, *et seq.*;

bb. N.M. Stat. Ann. §§ 55-2-314, *et seq.*;

cc. N.D. Cent. Code §§ 41-02-31, *et seq.*;

dd. Ohio Rev. Code Ann. §§ 1302.27, *et seq.*;

ee. Okla. Stat. Tit. 12A, §§ 2-314, *et seq.*;

ff.  13 Pa. Stat. Ann. §§ 2314, *et seq.*;

gg. R.I. Gen. Laws §§ 6A-2-314, *et seq.*;

hh. S.C. Code Ann. §§ 36-2-314, *et seq.*;

ii.  S.D. Codified Laws §§ 57A-2-314, *et seq.*;

jj.  Tex. Bus. & Com. Code Ann. §§ 2.314, *et seq.*;

kk. Utah Code Ann. §§ 70A-2-314, *et seq.*;

ll.  Va. Code Ann. §§ 8.2-314, *et seq.*;

mm.  Vt. Stat. Ann. Tit. 9A, §§ 2-314, *et seq.*;

nn. W. Va. Code §§ 46-2-314, *et seq.*; and

oo. Wyo. Stat. Ann. §§ 34.1-2-314, *et seq.*

59.     Defendant manufactured and distributed Noticed Products for sale to Plaintiff and the Class and Sub-class members.

60.     Defendant impliedly warranted to Plaintiff and Class and Sub-class members that their Noticed Products were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

61.     As alleged herein, Defendant breached the implied warranty of merchantability because the Noticed Products suffer from a safety defect. The Noticed Products are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

62.     Due to the safety defect, Plaintiff and the members of the Class and Sub-class cannot use their Noticed Products as intended, substantially free from defects.  The Noticed Products do not provide safe and reliable function as intended, represented, or described and pose a serious risk of injury.  As a result, Plaintiff and the members of the Class and Sub-class cannot use their Noticed Products for the purposes for which they purchased them.

63.     Furthermore, due to the safety defect, Plaintiff and the Class and Sub-class members cannot operate their Noticed Products as intended, substantially free from defects, unless they register for, receive, and install a replacement handle. This replacement handle comes with no instructions, and the mere replacement of a plastic part does not adequately assuage concerns that the risk of severe injury or amputation may not occur again. As a result, Plaintiff and members of the Class and Sub-class cannot use their Noticed Products for the purposes for which they purchased them.

64.     Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies.  Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class and Sub-class members have been injured in an amount to be proven at trial.

**COUNT II**
**VIOLATIONS OF STATE CONSUMER FRAUD ACTS**
**(On behalf of Plaintiff and the Multi-State Consumer Fraud Acts Sub-class)**

65.     Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

66.     Plaintiff brings this Count on behalf of herself and the Multi-State Consumer Fraud Acts Sub-class against Defendant.

67.     The Consumer Fraud Acts of the States in the Multi-State Consumer Fraud Acts Sub-class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a.     California (Cal. Bus. & Prof. Code §17200, *et seq.*)

b.     Florida (Fla. Stat. §501.201, *et seq.*);

c.     Illinois (815 Ill. Comp. Stat. §505/1, *et seq.*);

d.     Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);

e.     Michigan (Mich. Comp. Laws §445.901, *et seq.*);

f.     Minnesota (Minn. Stat. §325F.67, *et seq.*);

g.     Missouri (Mo. Rev. Stat. §407.010, *et seq.*);

h.     New Jersey (N.J. Stat. §56:8-1, *et seq.*);

i.     New York (N.Y. Gen. Bus. Law §§349 and 350); and

j.       Washington (Wash. Rev. Code §19.86.010, *et seq*.);

68.      Plaintiff and the other members of the Multi-State Consumer Fraud Acts Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Subclass because Plaintiff and Members of the Multi-State Consumer Fraud Acts Sub-class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

69.      Defendant engaged in unfair and/or deceptive conduct by making material representations and omissions regarding the safety and utility of the coolers, and the suggested repair, as discussed herein.

70.      Defendant intended that Plaintiff and each member of the other Members of the Multi-State Consumer Fraud Acts Sub-class would rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

71.      Given Defendant's longstanding position in the industry as a leader in reliable coolers, Plaintiff and reasonable consumers trusted and relied upon Defendant's representatives regarding the safety and utility of the Noticed Products.

72.      As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and the other Members of the Multi-State Consumer Fraud Acts Sub-class have sustained damages in an amount to be proven at trial.

**COUNT III**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE PRACTICES ACT**
**815 ILCS § 505-1, *et seq*. ("ICFA")**
**(On Behalf of Plaintiff and the Illinois Sub-Class)**

73.      Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

74.     Plaintiff brings this cause of action on behalf of herself and the Illinois Sub-Class against Defendant.

75.     Plaintiff and other Illinois Sub-class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS § 505/1(e).

76.     Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

77.     At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

78.     Plaintiff and the proposed Sub-class members are "consumers" who purchased the Noticed Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS § 505/1(e).

79.     The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS § 505/2.

80.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

81.     Plaintiff and the other Illinois Sub-class Members reasonably relied upon Defendant's misrepresentations and omissions alleged herein regarding the Noticed Products.

82.     Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA § 505/1, *et seq*.

21

83.    Defendant violated the ICFA by representing that the Noticed Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

84.    Defendant advertised the Noticed Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

85.    Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

86.    Before placing the Noticed Products into the stream of commerce and into the hands of consumers, including Plaintiffs and reasonable consumers, Defendant knew or should have known that the Noticed Products had a serious defect, and were otherwise not able to safely or reliably function as intended and created a serious risk to injury of the user, but Defendant omitted and concealed this material fact to consumers, including Plaintiff and Illinois Sub-class members, by continuing to place the Noticed Product into the stream of commerce without any notice or disclosure of the material defect.

87.    Defendant chose to market the Noticed Products in this way to impact consumer choices and gain market share. They are aware that all consumers who purchased the Noticed Products were exposed to and would be affected by its misrepresentations and omissions and would reasonably believe that the Noticed Products safely and reliably functioned and were safe for use by the user, and that Defendant's marketing materials, including representations and omissions, were otherwise accurate. However, Defendant's representations are false and misleading because the Noticed Products contain a material defect, are not safe for use by its user, and do not function safely or reliably.

88.      Defendant then chose to remedy this material defect by providing consumers with a replacement handle that consumers have to install themselves in order to purportedly be able to use the cooler safely.

89.      Defendant intended that Plaintiff and each of the other Illinois Sub-class members would reasonably rely upon the representations, misleading characterizations, and material omissions concerning the true nature of the Noticed Products.

90.      Defendant's representations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause Plaintiff and the other Illinois Sub-class members to be deceived about the true nature of the Noticed Products.

91.      Plaintiff and the Sub-class Members have been damaged as a proximate result of Defendant's violations of the ICFA. They have suffered damages as a direct and proximate result of purchasing the Noticed Products.

92.      As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Sub-class members have suffered ascertainable losses of money caused by Defendant's representations and material omissions regarding the ability of the Noticed Products to function as intended.

93.      Had they been aware of the true nature of the Noticed Products, Plaintiff and Illinois Sub-class Members would have paid less for the Noticed Products or would not have purchased them.

94.      Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Sub-class members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS § 505/10a. Plaintiff and

Illinois Sub-class members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

## COUNT IV
### UNJUST ENRICHMENT/QUASI-CONTRACT
**(On Behalf of the Multi-State Implied Warranty Sub-Class, and the Multi-State Express Warranty Sub-Class, and, alternatively, the Illinois Sub-class)**

95.　Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

96.　Plaintiff's individual claims are brought under the laws of the State in which she purchased her Noticed Products (Illinois). The claims of absent members of the Multi-State Implied Warranty Sub-class and Multi-State Express Warranty Sub-class are brought under the laws of the State in which they purchased their Noticed Products.

97.　Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Noticed Products, which Defendant knew.

98.　Defendant either knew or should have known that the payments rendered by Plaintiff and the Sub-classes were given with the expectation that the Noticed Products would have the qualities, characteristics, and suitability for use represented and warranted by Igloo. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

99.　By its wrongful acts and omissions described herein, including selling the Noticed Products, which contain both a safety defect described in detail above and which do not safely operate as represented, did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Sub-class Members.

100.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

101.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Sub-class Members when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Noticed Products.

102.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Noticed Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured the defective Noticed Products, and Defendant misrepresented by omission the nature of the Noticed Products and knowingly marketed and promoted dangerous and defective Noticed Products, which caused injuries to Plaintiffs and the members of the Sub-classes because they would not have purchased the Noticed Products based on the exact representations if the true facts concerning the Noticed Products had been known.

103.    Plaintiff and putative Sub-class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Noticed Products on the same terms or for the same price had they known the true nature of the Noticed Products and the misstatements regarding what the Noticed Products were and their characteristics.

104.    Defendant either knew or should have known that payments rendered by Plaintiff and putative Sub-class Members were given and received with the expectation that the Noticed Products would work as represented by Defendant in advertising, on Defendant's websites, and

the Noticed Products' labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

105.    Plaintiff and putative Sub-class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

106.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Sub-class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Class and Sub-classes, prays for relief and judgment, including entry of an order:

A.  Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B.  Directing that Defendant bear the costs of any notice sent to the Class(es);

C.  Awarding Plaintiff and Class and Sub-class members compensatory, statutory, actual, or other monetary damages, in an amount to be determined at trial;

D.  Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Noticed Products or order Defendant to make full restitution to Plaintiff and the members of the Class(es);

E.  Awarding restitution and other appropriate equitable relief;

F.  Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

G.  Granting an Order requiring Defendant to fully and adequately disclose the safety risks associated with the Noticed Products to anyone who may still be at risk of buying and using the Noticed Products;

26

H.  Ordering a jury trial and damages according to proof;

I.  Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.  Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K.  Awarding pre-judgment and post-judgment interest;

L.  Awarding punitive damages; and

M.  Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Dated:  March 24, 2025                 Respectfully submitted,


*/s/ Lisa R. Considine*
Lisa R. Considine
Mason A. Barney
Leslie L. Pescia*
**SIRI | GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com
lconsidine@sirillp.com
lpescia@sirillp.com

Kevin Laukaitis
Daniel Tomascik
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com

*Attorneys for Plaintiffs and Putative Class Members*

*pro hac vice forthcoming

27