**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KELSEA HOLTON and LUIS MIRANDA, on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> vs. <br><br> IGLOO PRODUCTS CORP., a Delaware corporation. <br><br> *Defendant*. | C.A. No.: 25-cv-00298-JLH |
| KRISTEN RIFFLE, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> vs. <br><br> IGLOO PRODUCTS CORP., <br><br> *Defendant.* | C.A. No.25-cv-00495-JLH |

**PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL**

Under Federal Rule of Civil Procedure 23(g)(3), Plaintiffs Kelsea Holton, Luis Miranda,

and Kristen Riffle (the "Plaintiffs"), by and through their undersigned counsel, respectfully move

this Honorable court for the appointment of Joel D. Smith and Yeremey Krivoshey of Smith

Krivoshey, PC ("Smith Krivoshey"), and Kevin Laukaitis and Daniel Tomascik of Laukaitis Law

LLC ("Laukaitis") (collectively, "Proposed Interim Class Counsel") as Interim Co-Lead Counsel

and R. Grant Dick IV of Cooch and Taylor, P.A. as Interim Liaison Counsel.

I.    **INTRODUCTION**

The two above-captioned class actions (collectively, the "Related Actions")[1] involve common questions of law and fact against the same defendant, Igloo Products Corp. ("Igloo"), and are currently pending before the District. Together, Plaintiffs and Igloo (collectively, the "Parties") have stipulated to consolidate the two matters into the lowest-numbered case, per Fed. R. Civ. P. 42(a). ECF No. 12.

The Proposed Interim Class Counsel and the interim liaison counsel are prosecuting this litigation in tandem, safeguarding the collective benefit of Plaintiffs and the proposed class members. As set forth below, the Proposed Interim Class Counsel are experienced class action attorneys with expertise in consumer class action cases involving defective products and automobiles, including products recalled through the CPSC. *See gen.* Declaration of Yeremey Krivoshey ("Krivoshey Decl."), Ex. 1 (Smith Krivoshey firm resume); Declaration of Kevin Laukaitis ("Laukaitis Decl."), Ex. 1 (Laukaitis firm resume).  The undersigned counsels have researched and independently developed the legal theories and claims in this matter, have each retained Delaware counsel, have spoken to dozens of class members, have vetted merits experts, and have submitted a Freedom of Information Act ("FOIA") request on the CPSC concerning the recall. Each firm possesses the resources needed to prosecute this case efficiently on behalf of the proposed class and has already demonstrated its commitment to dedicating the necessary capital and other resources to that effort.  And, as discussed below, scores of consumers have already contacted their firms about this lawsuit. Together, the Proposed Interim Class Counsel are uniquely

---

[1] Plaintiffs filed their respective actions as follows: *Holton, et al. v. Igloo Products Corp.*, Case No.: 1:25-cv-00298-JLH, United States District Court of the District of Delaware, filed March 11, 2025; and *Riffle v. Igloo Products Corp.*, 3:25-cv-50131, United States District Court of the Northern District of Illinois. The *Riffle* matter, per stipulation, was transferred to the District of Delaware on April 24, 2025, and now bears the case number 1:25-cv-00495-JLH, United States District Court of the District of Delaware.

positioned to represent Plaintiffs and the proposed class based upon their pertinent experience. *See gen*. Krivoshey Decl. ¶¶ 2-8 (discussing qualifications of counsel and work done to date on the case); Laukaitis Decl. ¶¶ 3-10 (same).

As detailed below, the early designation of an interim class counsel not only follows the approach this Court and others have addressed similar requests, but is also warranted due to the large volume of affected consumers and the presence of competing putative class actions. Early designation of interim class counsel is crucial to promoting judicial efficiency and preventing an anticipated flood of competing "tag-along" case filings across the country.  At least three "tag-along" class actions have already been filed in the Central District of California.  *See Zanettino v. Igloo Products Corp.*, Case No. 2:25-cv-01917 (C.D. Cal.); *Castellano v. Igloo Products Corp.*, Case No. 2:25-cv-02733 (C.D. Cal.); *Nguyen v. Igloo Products Corp., et al.*, Case No. 8:25-cv-00716 (C.D. Cal.). Krivoshey Decl., Exs 2, 3, 5 (Complaints in tag-along cases).  By exercising its authority under Rule 23(g) to appoint interim class counsel, this Court will promote the fair and efficient resolution of this controversy.

Finally, R. Grant Dick IV and the law firm of Cooch and Taylor, P.A. is well-positioned to serve as liaison counsel due to their experience litigating class action cases in the District of Delaware.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Related Actions arise from the recall of Igloo's defective and dangerous coolers. Igloo is a Delaware company that designed, built, manufactured, marketed, distributed, promoted, and/or sold the defective Igloo 90 Qt. Flip & Tow Rolling Coolers ("Coolers" or "Products") nationwide, including in Delaware. The Plaintiffs allege that on February 13, 2025, the CPSC announced a recall of approximately 1,060,000 of the noticed Products sold in the United States because the

tow handle can pinch consumers' fingertips against the cooler, posing fingertip amputation and crushing hazards.[2] The Products were sold nationwide at Costco, Target, Academy, Dick's and other stores nationwide, as well as online at Amazon.com, Igloocoolers.com, and other websites from January 2019 through January 2025 for between $80 and $140.[3] The Products includes certain Igloo 90 Quart Flip & Tow Rolling Coolers manufactured prior to 2024.[4]

The manufacturing defect renders the Products unfit for the ordinary purpose they are used: a safe and reliable method for storing and transporting items that need to remain cool. The defective tow handle renders the Products worthless, as reasonable consumers are unlikely to use an object that carries a risk of amputation where that object ordinarily – in this case, a rolling cooler – does not carry that risk.  Moreso, the Products are useless considering Plaintiffs and the Class cannot use them during the recall, as Defendant's recall notice states that "[c]onsumers should immediately stop using the recalled coolers."[5] Igloo offers consumers only one option: to participate in a recall by contacting Igloo for a free replacement handle.[6]

On May 8, 2025, about a month and a half after the Related Actions were filed, Defendant announced an expansion of the February 13, 2025 recall to cover an additional 130,000 affected Igloo 90 Qt. Flip & Two Rolling Coolers.[7]  The May 8, 2025 CPSC recall announcement states that "[s]ince the recall was announced in February 2025, Igloo has received 78 reports of fingertip

---

[2] *See,* https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards (Last accessed May 7, 2025).
[3] *Id.*
[4] The list of affected Products is extensive, but can be identified by an Model/SKU# and the dates of manufacture, imprinted on the bottom of the cooler in a circular pattern with an arrow pointing to the month of manufacture and the last two digits of the year of manufacture inside the circle. A full listing of affected products is available on the CPSC website. *See, e.g*., https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards
[5] *See,* https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards (Last accessed May 7, 2025).
[6] *Id*.
[7] *See* https://www.cpsc.gov/Recalls/2025/Igloo-Expands-Recall-of-90-Qt-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards-Total-Recalled-Now-Nearly-1-2-Million

injuries, including 26 resulting in fingertip amputations, bone fractures or lacerations."[8]  This adds to the 12 reported fingertip injuries reported in the initial recall in February, where Defendant likewise reported incidents of "fingertip amputations, bone fractures, and lacerations."  Plaintiffs will include additional allegations concerning the expanded recall in their upcoming consolidated complaint, and seek to represent all consumers that bought an affected model.

As a result of Defendant's conduct in connection with the design, manufacturing, distribution, recalls, and repair of the Products, Plaintiffs and the proposed class paid a price premium and sustained economic injuries. Some of the Plaintiffs, like many proposed class members, also suffered physical injuries due to the manifestation of the Defect. As such, the Related Actions are class action lawsuits filed by Plaintiffs against Defendant, alleging that Defendant caused injury in fact, including economic and statutory damages. Through their putative class actions, Plaintiffs allege a combination of the following causes of action against Defendant: (i) breach of the implied warranty of merchantability, (ii) fraud, (iii) violations of state consumer protection statutes, and (iv) unjust enrichment/quasi-contract. After filing their respective cases, Plaintiffs' counsel conferred regarding potential consolidation and coordination, and after consulting with Defendant, stipulated to consolidation of these matters.

As will be discussed further, the undersigned have the requisite experience and resources to be appointed interim class counsel and liaison counsel under Fed. R. Civ. P. 23(g), and they have been working extensively, efficiently, and cooperatively on this matter since it was filed. Accordingly, Plaintiffs respectfully move the Court to grant this motion.

---

[8] *Id.*

### III.   APPOINTMENT OF INTERIM CO-LEAD COUNSEL

#### A.  The Appointment of Interim Class Counsel Is Appropriate Here

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of an interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a class action." *See* Fed. R. Civ. P. 23(g)(3) (cited by *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2023 WL 4384446, at *1 (N.D. Cal. July 7, 2023)); *see also, In re F21 Opco LLC Data Breach Litig.*, No. 2:23-CV-07390-MEMF-AGR, 2024 WL 2984018, at *2 (C.D. Cal. June 12, 2024)); *Henderson v. Volvo Cars of N. Am., LLC*, Civil Action No. 09-cv-4146(DMC)(JAD), 2010 U.S. Dist. LEXIS 151733, at *7 (D.N.J. Nov. 1, 2010). The Court need not make any decision as to whether class certification will eventually be granted in order to appoint interim class counsel. *Id*. The appointment of interim counsel is discretionary and is particularly suited to complex actions. *See, In re Shop-Vac Mktg. & Sales Practices Litig.*, No. MDL No. 2380, 2013 WL 183855, at *1 (M.D. Pa. Jan. 17, 2013).

Rule 23(g) contemplates early appointment of class counsel where, as here, there is a presence of tag-along cases, and a likelihood that other tag-along will follow. *See, e.g.*, *Bernstein v. Cengage Learning, Inc*., 2019 WL 6324276, at *2 (S.D.N.Y. Nov. 26, 2019) ("[T]he recent existence of those other cases asserting similar claims with other plaintiffs represented by counsel other than [Proposed Interim Class Counsel] shows that the possibility of more such cases is not foreclosed. Establishing interim lead counsel in this action will minimize the risk of duplicative filings and allow the Court to consolidate related filings more efficiently."); *see also, Niemczyk v. Pro Custom Solar*, 2024 WL 1698056, at *2 n. 3 (D.N.J. Jan. 3, 2024) (appointing Smith Krivoshey, PC's Yeremey Krivoshey (at the time with his prior law firm) as co-lead interim class counsel where counsel was first to file and there was "at least" one other putative similar class

action pending against the defendant in a different district court); *Boyd v. Prudential Financial, Inc.,* Case No. 2:24-cv-06818 (D.N.J.) (appointing Laukaitis Law's Kevin Laukaitis as interim co-lead counsel on first-filed complaint in series putative class cases filed several weeks apart concerning the same data breach, with a contested leadership motion); *Thomas v. Gerber Prods. Co.*, 2012 WL 1606627, at *1 (D.N.J. May 8, 2012) (granting motion to consolidate and appointing interim lead class counsel where related class actions were filed throughout the country concerning allegedly misleading marketing of baby formula); *Tolmasoff v. General Motors, LLC*, 2016 WL 3548219, at *9 (E.D. Mich. June 30, 2016) (appointing two law firms as interim class counsel where "other[] [similar cases] may follow.")

Multiple, identical, or similar actions prevent efficient prosecution of claims, may lead to a disjointed legal strategy, and can prejudice defendants, plaintiffs, and putative class members. *See, e.g.*, *Brown v. Accellion, Inc.,* No. 5:21-cv-01155-EJD, 2023 U.S. Dist. LEXIS 23146, at *6 (N.D. Cal. Feb. 10, 2023); *see also, Ekin v. Amazon Servs., LLC*, No. 14-244, 2014 WL 12028588, at *3 (W.D. Wash. May 23, 2014) ("designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.") (quoting Manual of Complex Litigation § 21.11 (4th ed. 2004)). Indeed, the Advisory Committee Notes to Rule 23(g)(2)(A) explain that the rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."

Designating an interim counsel now will "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *See,* MANUAL FOR COMPLEX LITIGATION § 21.11 (4th ed. 2004) ("MCL"). This clarity is crucial

here given (i) the ubiquity of the defect, (ii) the volume of consumers who have contacted the undersigned counsel about the defect and this lawsuit, and (iii) the presence of the later-filed tag-along cases. The appointment of an interim class counsel will ensure that these proposed class members can speak with one voice.

Additionally, determining the appointment of the lead class counsel requires the court to consider counsel's: "(1) work in identifying and investigating potential claims; (2) experience in handling class action and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources." *See, In re F21 Opco LLC Data Breach Litig.*, 2024 U.S. Dist. LEXIS 105444, at *1 (citing Fed. R. Civ. P. 23(g)(1)(A)). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *See,* Fed. R. Civ. P. 23(g)(1)(B). The purpose of this Court's review is to ensure that the counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *See, MCL*, § 10.22. The goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also, Cappello v. Franciscan All., Inc.*, No. 16-290, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See,* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1802.3 (3d ed. 2005).

### B.       The Court Should Appoint Smith, Krivoshey, Laukaitis, and Tomascik As Interim Co-Lead Counsel

As discussed further, the Proposed Interim Class Counsel readily satisfy every Rule 23(g)(1)(A) factor.

### i.    The Proposed Interim Class Counsel Performed Substantial Work in Investigating this Action.

**First**, the Proposed Interim Class Counsel have been diligent in investigating and advancing this case. Among other things, (i) they have investigated the circumstances surrounding the Products and the alleged defect, (ii) Defendant's recalls of the Products and Defendants' handling of consumer complaints, and (iii) the consumer experiences concerning the Products. *See, In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2010 WL 1433316, at *6 (N.D. Ill. Apr. 7, 2010) (noting that the lead firm's "amended complaint is detailed and showcases its attorneys' efforts in prosecuting this matter, and the court therefore considered it favorably when evaluating the relative merits of the applicants"); *see also, Moore's Federal Practice* § 23.120[3][a] (2007) (noting that courts may consider whether applicant has undertaken "the process of drafting the complaint [which] requires investigatory and analytical effort"). Krivoshey Decl. ¶ 8; Laukaitis Decl. ¶ 10.

**Second**, their firms have (i) devoted substantial time to researching the relevant law to prepare the complaints, (ii) conferred with dozens of consumers that have contacted their firms, (iii) vetted experts that they anticipate will submit a report at class certification, and (iv) have served a FOIA request on the CPSC. *See, In re Apple & AT&TM Antitrust Litig.*, No. 07-cv-05152 JW, 2008 U.S. Dist. LEXIS 120061, at *9-10 (N.D. Cal. Apr. 15, 2008) (appointing firm to leadership position where it had "engaged an antitrust economist and invested significant time researching and investigating the potential claims…"); *In re Vanguard Chester Funds Lit.*, 625 F. Supp. 3d 362, 366 (E.D. Penn. Sep. 1, 2022) ("When analyzing the first Rule 23(g)(1)(A) factor, the work the work that counsel has done to identify or investigate potential claims, the court may look to whether proposed counsel had interviewed class members, researched claims, and engaged experts

to determine the depth of their investigation.") (internal quotations and bracketing omitted); Krivoshey Decl. ¶ 8. All these factors support their appointment.

### ii.     The Proposed Interim Class Counsel Have Relevant Experience and Knowledge of the Applicable Law.

"In terms of the second and third Rule 23(g)(1)(A) factors concerning knowledge and experience, courts have considered both the general and specific experience of counsel." *See, In re Vanguard Chester Funds Lit.*, 625 F. Supp. 3d 362, 366 (E.D. Penn. Sep. 1, 2022).  The Proposed Interim Class Counsel may be among the most qualified counsel in the country as to both "general" experience litigating complex class actions, and "specific" experience litigating and resolving CPSC recall class actions.  The qualifications and experience of these firms are detailed in the accompanying declarations filed herewith and the firm resumes attached thereto. Krivoshey Decl. ¶¶ 2-7; Laukaitis Decl. ¶¶ 3-7.

As to "general" class action experience, the Proposed Interim Class Counsel have a slate of attorneys that have demonstrated decades of success in complex class actions nationwide.  For instance, Smith Krivoshey's attorneys have accomplished the relatively rare feat of taking a class action through trial and winning.  In 2019, Mr. Krivoshey[9] secured a $267 million class action verdict in the *Perez v. Rash Curtis & Associates* case after a jury trial in the Northern District of California, which was the 12th largest verdict in the United States in all practice areas that year, and the 3rd highest class action verdict.  *See, Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) (upholding constitutionality of $267 million class trial judgment award). In 2021, the case settled for $75.6 million while on appeal, still the largest consumer class action settlement in the history of the Telephone Consumer Protection Act.  *See, Perez v. Rash Curtis &*

---

[9] Mr. Krivoshey was at the time a partner at the law firm of Bursor & Fisher, P.A.

*Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. Oct. 1, 2021). More generally, even just looking at the past five years alone, the attorneys at Smith Krivoshey have obtained hundreds of millions in recoveries for class members, including settlements of $83.6 million in a class case against *Six Flags*, $75.6 million in *Perez* (paid out by the Indian Harbor Insurance Company, a defendant in a spin-off bad faith insurance case), $74 million in a class case against BMW, $40 million in a class case against Harbor Freight Tools, $35 million in a class case against Western Dental, $30 million in a class case against Momentum Solar, $20.4 million in a class case against Alterra Mountain Company, and many more millions in class settlements against Turkish Airlines, Lufthansa, Kimberly-Clark, The Regents of the University of California, Jaguar Land Rover North America, Mattress Firm, and others.

Likewise, prior to founding Laukaitis Law LLC, Mr. Laukaitis cut his teeth in the class action world as part of the plaintiffs' attorney team that served as Co-Lead Trial Counsel representing 68,000 individuals whose statutory rights were violated by public dissemination of their criminal record history information. Mr. Laukaitis and his team prevailed in a jury trial and achieved an unprecedented settlement for Pennsylvania inmates booked or otherwise detained at the Bucks County Correctional Facility between 1938 and June 18, 2013. The case, *Taha v. Bucks County*, No. 12-cv-6867 (E.D. Pa.), is considered the first class action lawsuit in the United States to proceed to trial on the impact of digital criminal stigma and a government's statutory obligation to protect its citizenry against such stigma.

Since its founding, Mr. Laukaitis and Mr. Tomascik have aided in Laukaitis Law's prominent rules as class counsel or on executive committees for class actions nationwide, including *Boyd v. Prudential Financial, Inc.*, Case No. 2:24-cv-6818, (D.N.J.) (co-lead class counsel in data breach affecting 2.5 milliong people); *Vela, et al. v. AMC Networks Inc.*, 1:23-cv-02524-ALC

(S.D.N.Y.) (class counsel in $8mil common fund class action settlement involving alleged violations of the VPPA); and *In re: Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litig.*, 1:21-cv-04447 (N.D. Ill.) (Mr. Laukaitis and Mr. Krivoshey appointed on executive committee of $15M class action settlement on allegedly dangerous pet products).

The Proposed Interim Class Counsel attorneys assigned to this matter (i) have secured hundreds of millions on behalf of consumers through class settlements, (ii) routinely serve as appointed lead or co-lead class counsel, and (iii) are recognized experts in complex class actions. *See* Krivoshey Decl. ¶¶ 3-6; Laukaitis Decl. ¶¶ 3-7.

As to the "specific" knowledge and experience concerning CPSC recall and product defect class actions, the Proposed Interim Class Counsel are amongst the most experienced and successful attorneys in the country. For instance, in *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020), Joel Smith of Smith Krivoshey[10] won a contested motion for class certification in a case concerning chainsaws that CPSC recalled; an incredibly rare feat in a CPSC recall case. The case later settled for a valuation of up to $40 million on a class basis. The Proposed Interim Class Counsel have also settled many other product-defect cases on a class basis, including car defects, electronic defects, and other class actions stemming from CPSC recalls. *See, e.g., Payero et al. v. Mattress Firm*, Case No. 7:21-cv-03061-VLB (S.D.N.Y.) (final approval granted for $4.9 million settlement achieved by Joel Smith stemming from a CPSC recall of bed frames); *see also, George et al. v. Jaguar Land Rover N. America, LLC*, Case No. 2:20-cv-17561-JSA (D.N.J.) (granting final approval to class settlement in case where Jaguar and Land Rover's infotainment systems were alleged to be defective, where Smith Krivoshey was appointed co-lead counsel); *see also In re Seresto*, 1:21-cv-04447, *supra*.

---

[10] Mr. Smith was at the time a partner at the law firm of Bursor & Fisher, P.A.

**iii.**    **The Proposed Interim Class Counsel Have Committed the Resources Necessary to Represent the Class and Will Continue to Commit Through the Pendency of the Litigation**

A court appointing interim lead counsel should consider, in part, the resources that counsel will commit to representing the putative classes. *See,* Fed. R. Civ. P. 23(g)(1)(C). As needed, the proposed interim co-lead counsel can draw upon the skills and talents of experienced attorneys and staff members located across the country. Each firm understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of the proposed class members. Moreover, the Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to prosecuting this action, including vetting anticipated class certification experts. Krivoshey Decl. ¶ 8.  The Proposed Interim Class Counsel have also communicated with dozens of affected consumers, drafted complaints, and served a FOIA request. *See id.*  To ensure adequate funds are available to prosecute this litigation on behalf of the Putative Class, the Proposed Interim Class Counsel will also establish a system to pay assessments proportional to the needs of the case. And, as their firm resumes and counsels' experience indicate, the Proposed Interim Class Counsel have the resources and willingness to see this litigation through to its conclusion, including trial. *See* Krivoshey Decl. ¶¶ 7, 14; Laukaitis Decl. ¶ 11.

**iv.**    **The First-to-File Rule Further Supports the Appointment of Proposed Interim Class Counsel**.

The *Holton, et al. v. Igloo Products Corp.* action, filed by Smith Krivoshey, is the first-filed action concerning the Defendant's recall of the Products filed in a court of general jurisdiction for Defendant, and the first-filed action in a jurisdiction where these Plaintiffs' nationwide class can be heard.  When considering Rule 23(g) motions, federal courts nationwide give deference to counsel in the first-filed case when they are qualified to handle the action.  *See, In re Mun.*

*Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints and holding that where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the potential claims in this action."); *see also, In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing class counsel in part because they "filed the first complaint in this litigation"); *Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Carlin v. DairyAmerica, Inc.*, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) (where multiple counsel filing two identical class action lawsuits seek appointment of interim class counsel, appointment of the first-filed counsel is appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

The Proposed Interim Class Counsel respectfully urges the Court to follow the prevailing

approach adopted by courts nationwide and reach the same result.  Notably, even a cursory review of the other tag-along complaints shows that they do not add anything meaningful to this litigation. *See* Krivoshey Decl., Ex. 2 (*Castellano v. Igloo Prods. Corp.* complaint); *id*. Ex. 5 (*Nguyen v. Igloo Prods. Corp..* complaint). For instance, the later-filed *Castellano* complaint was brought by one California consumer within the Central District of California, against Defendant, whom Castellano alleges is a "Texas corporation with its principal place of business in the State of Texas."  *See, Austin* Compl., at ¶¶ 18-19.  Plaintiff Castellano seeks only to represent a class of "persons who purchased the Products in the State of California." *Id.* at 63. Likewise, the later-filed *Nguyen* complaint was brought by one California consumer within the Central District of California, against Defendant, whom Nguyen alleges is a "Delaware corporation" with a principal place of business in Katy, Texas. *See Nguyen* Compl. ¶¶ 17, 19. Likewise, Plaintiff Nguyen seeks only to represent a class of persons "in California who purchased or otherwise own one of the Igloo 90 Quart Flip & Tow Coolers impacted by the Recall." ¶ 64.

In *Zannettino v. Igloo Prods. Corp*., the initial plaintiff technically filed the first complaint on March 5, 2025, six days before *Holton* was filed.  *See* Krivoshey Decl., Ex. 4 (Zannettino Docket).   However, the March 5, 2025 complaint was stricken.  *Id*.  The first non-stricken complaint filed in that action was on March 13, 2025, two days after *Holton* was filed.  *Id*., ECF No. 11.  In any case, the court in *Zannettino* likely only has jurisdiction over a California subclass. The now operative *Zannettino* complaint, filed on April 14, 2025, is brought by two plaintiffs, Anthony Zannettino, a California resident, and Kathryn Trainor, a Massachusetts resident. *See* Krivoshey Decl., Ex. 3, (*Zannettino* Compl.) ¶¶ 17-18. [11] They bring claims against Defendant,

---

[11] Ms. Trainor initially brought her claims in the Eastern District of Pennsylvania. *See Trainor v. Igloo Products Corp.*, No. 2:25-cv-00941 (E.D. Pa.); Krivoshey Decl., Ex. 6. The undersigned counsel struggle to see how the Eastern District of Pennsylvania had jurisdiction to hear a

whom they allege is a "Delaware corporation" with a principal place of business in "Katy, Texas." ¶ 19. They seek to represent three classes simultaneously: a "National" class, a "California" subclass, and a "Massachusetts" subclass. ¶ 61. But the undersigned fail to see how the *Zannettino* court can hear class claims on behalf of a "National" or even a "Massachusetts" subclass; Defendant, by the *Zannettino* plaintiffs' own pleading, is either subject to general jurisdiction in Delaware, where Defendant is incorporated, or Texas, where they have their principal place of business. Without general jurisdiction – and there is nothing in *Zannettino* to suggest Defendant is subject to general jurisdiction in California – that court likely cannot hear claims brought by either a national class or a Massachusetts subclass.

Only in the instant *Holton* case is there a first-filed complaint in a court of general jurisdiction, where Class members stand their best (and likely only) chance at multi-state or nationwide class certification. In *Holton*, Defendant is alleged to be a "Delaware corporation" with a principal place of business in Texas. *Holton* Compl. at ¶ 10. The *Holton* complaint alleges several classes, including a "Nationwide," "Pennsylvania," and "California" subclasses, all of which Defendant is subject to on account of its being subject to general jurisdiction in Delaware. Likewise, the stipulated-to-be-consolidated *Riffle* case, with an Illinois plaintiff, may also be heard in Delaware on account of that same general jurisdiction. Therefore, the *Holton* case is the first-filed case in the *correct* jurisdiction for a nationwide or multi-state class.

The Proposed Interim Class Counsel are in a far better position to lead this action on behalf of the Putative Class because they (i) filed in the proper venue (this Court has general jurisdiction

---

Massachusetts resident's claims against a "Texas corporation," (*Trainor*, ¶ 19) or how this same court could have jurisdiction over a "Nationwide Class" or even a "Pennsylvania Subclass," given Defendant is not subject to general jurisdiction in Pennsylvania nor was there a named, present Class Member who had standing in Pennsylvania to bring a class. *Id.* ¶ 40.  It is also equally puzzling why this Massachusetts resident then joined the *Zannettino* action in California, another venue that does not seem to have jurisdiction over the claims, if not for forum shopping.

over Defendant), (ii) have vetted more appropriate plaintiffs to maximize litigation and settlement pressure (with Plaintiffs representing Pennsylvania, California, and Illinois subclasses), (iii) have done a more thorough investigation and work-up of the case, and (iv) have the most qualified counsel. Likewise, appointing an interim lead counsel now will have the added benefit of stemming the wave of future copycat filings in jurisdictions nationwide.

**v.**     **Cooch and Taylor, P.A. (R. Grant Dick IV) Should be Appointed as the Interim Liaison Counsel.**

Plaintiffs also request that the Court appoint R. Grant Dick IV of Cooch and Taylor, P.A. as the Interim Liaison Counsel. In its discretion, a court may appoint an interim liaison counsel to assist the interim class counsel, particularly in ensuring compliance with local rules and promoting adherence to best practices. *See,* MCL, § 10.221. The tasks to be performed by the interim liaison counsel in this litigation include, but are not limited to, the following:

1. Work in conjunction with interim class counsel to assist in coordination of meetings, discovery, litigation positions, and other tasks;

2. Ensure that Plaintiffs comply with all local rules and procedures governing the practice of law before this Court;

3. Maintain and distribute to co-counsel and to Defendants' liaison counsel an up to-date service list;

4. Receive and, as appropriate, distribute to co-counsel orders from the court and documents from opposing parties and counsel; and

5. Establish and maintain a document depository.

*See,* MCL, §§ 40.22, 10.221. In this respect, Mr. Dick of Cooch and Taylor, P.A. is well-situated to serve in this role, as he (i) is a director of Cooch and Taylor, P.A., located in Delaware; (ii) maintains a thriving plaintiff-side complex litigation practice including the prosecution of class actions in diverse areas of law such as data breach, WARN, and shareholder rights cases; and (iii) regularly practices before this Court. *See gen.* Krivoshey Decl., Ex. 7 (Cooch and Taylor P.A. firm

17

resume).  Consequently, his knowledge of the Delaware bar and this Court will help this matter proceed with the utmost efficiency and professionalism.

**STATEMENT REGARDING DELAWARE L.R. 7.1.1**

As required by Local Rule 7.1.1, counsel for movant avers that he has conferred with counsel for Defendant and that a reasonable effort, including oral communications, has been made to reach agreement with the opposing party on the matters set forth in the motion.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court appoint Joel D. Smith, Yeremey Krivoshey, Kevin Laukaitis, and Daniel Tomascik as Interim Co-Lead Counsel. Plaintiffs further request that R. Grant Dick IV of Cooch and Taylor, P.A. be appointed Interim Liaison Counsel.

Dated:  May 15, 2025

*/s/ R. Grant Dick IV*
R. Grant Dick IV (#5123)
Kevin D. Levitsky (#7228)
**Cooch and Taylor P.A.**
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3800
Email: gdick@coochtaylor.com
          klevitsky@coochtaylor.com

Yeremey O. Krivoshey (admitted *pro hac vice*)
**Smith Krivoshey, PC**
166 Geary Street, Suite 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
Email: yeremey@skclassactions.com

Joel D. Smith (admitted *pro hac vice*)
**Smith Krivoshey, PC**
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404

Facsimile: 888-410-0415
Email: joel@skclassactions.com

Lisa R. Considine*
Mason A. Barney*
Leslie L. Pescia*
**SIRI | GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com
lconsidine@sirillp.com
lpescia@sirillp.com

Kevin Laukaitis*
Daniel Tomascik*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com

* pro hac vice forthcoming

*Attorneys for Plaintiffs and the Proposed Class*

19