# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: IGLOO PRODUCTS COOLER RECALL LITIGATION | )<br>)<br>) | C.A. No.: 1:25-cv-00298-JLH<br>CONSOLIDATED |

## <u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT</u>

Hugh J. Marbury (#7427)
Kaan Ekiner (#5607)
**COZEN O'CONNOR**
1201 North Market St., Ste. 1001
Wilmington, DE 19801
(302) 295-2000
kekiner@cozen.com
nbarillo@cozen.com

-and-

Erica Rutner (*Pro Hac Vice*)
Michael Puretz (*pro hac vice*)
1801 N. Military Trail, Suite 200
Boca Raton, FL 33431-1810
(561) 245-6120
erutner@cozen.com

John A. Bertino (*Pro Hac Vice*)
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 912-4800
jbertino@cozen.com

*Attorneys for Defendant Igloo Products Corp.*

Dated: November 20, 2025

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

    I.      PLAINTIFFS LACK STANDING FOR MULTIPLE REASONS ................................... 6

        A.    Most Plaintiffs Lack a Concrete Injury Under Article III ................................................ 6

            1.    Four Plaintiffs Did Not Incur Any Cognizable Economic Loss ................................ 6

            2.    The Recall Defeats Plaintiffs' Overpayment Theory .................................................. 9

            3.    Plaintiffs' Contrived Complaints About the Recall Are Immaterial ......................... 10

        B.    All Plaintiffs Lack Standing to Seek Injunctive Relief ................................................ 13

        C.    Trainor Lacks Standing to Bring Class Claims Under Massachusetts Law ................................................................................................................................ 14

    II.    The Consumer Fraud Claims Fail on Multiple Grounds ................................................. 17

        A.    Plaintiffs Have Not Adequately Pled Their Consumer Fraud Claims ......................... 17

            1.    Plaintiffs Have Not Adequately Pled the "Who" of the Alleged Fraud ................... 17

            2.    Plaintiffs Have Not Adequately Pled Igloo's Pre-Sale Knowledge ......................... 19

        B.    The Delaware Consumer Fraud Claim Must Be Dismissed Because There Is No Conduct Alleged to Have Occurred in Delaware ..................................... 21

        C.    Trainor Cannot Pursue a Massachusetts Consumer Protection Claim .......................... 22

    III.    The Breach Of Warranty Claims Fail on Multiple Grounds ........................................... 23

        A.    The Express and Implied Warranty Claims Fail Because the Alleged Defect Did Not Manifest During the Warranty Period ................................................ 23

        B.    The Express Warranty Claims Fail Because Plaintiffs Never Presented the Coolers for Repair Nor Did Igloo Ever Fail to Repair Them ................................................................................................................................ 25

        C.    The MMWA Claim Fails for Lack of an Underlying Breach of Warranty ................................................................................................................... 27

    IV.    The Unjust Enrichment Claims Fail on Multiple Grounds ............................................. 27

        A.    Plaintiffs Have an Adequate Remedy at Law ............................................................... 27

    B.   Igloo Did Not Unjustly Retain Any Benefit Plaintiffs Provided to Them ................................................................................................................ 28

  V.   Plaintiffs Have Not Pled Facts Capable of Sustaining Their Punitive Damages Claim ............................................................................................................... 29

  CONCLUSION ............................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Samsung Telecomm's Am., LLC*,
  2014 WL 11430910 (C.D. Cal. Oct. 20, 2014) ........................................................ 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 5, 6

*Bakopoulos v. Mars Petcare US, Inc.*,
  592 F. Supp. 3d 759 (N.D. Ill. 2022) ...................................................................... 27

*Barnia v. Kaur*,
  646 F. Supp. 3d 154 (D. Mass. 2022) ...................................................................... 27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 5, 6

*Bristow v. Lycoming Engines*,
  2007 WL 1106098 (E.D. Cal. Apr. 10, 2007) .......................................................... 16

*Bush v. WellPet, LLC*,
  534 F. Supp. 3d 179 (D. Mass. 2021) ...................................................................... 27

*Campos v. Polaris, Inc.*,
  2024 WL 1816945 (C.D. Cal. Mar. 5, 2024) ............................................................ 24

*Carson v. HP Inc.*,
  750 F. Supp. 3d 376 (D. Del. 2024) .................................................................. 14, 17

*Castaneda v. Amazon.com, Inc.*,
  679 F. Supp. 3d 739 (N.D. Ill. 2023) ...................................................................... 19

*Cho v. Hyundai Motor Co., Ltd.*,
  636 F. Supp. 3d 1149 (C.D. Cal. 2022) ................................................................... 20

*Chudner v. TransUnion Interactive, Inc.*,
  2010 WL 11710658 (D. Del. Mar. 4, 2010) ............................................................. 22

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................................................... 9, 13

*Comes v. Harbor Freight Tools, USA, Inc.*,
  2021 WL 6618816 (C.D. Cal. Sept. 29, 2021) ........................................................... 9

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ........................................................................................... 15

*Darne v. Ford Motor Co.*,
  2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ............................................................ 26

*Diaz v. FCA US LLC*,
  2022 WL 4016744 (D. Del. Sept. 2, 2022) ..................................................... 17, 19, 20

*Elfaridi v. Mercedes-Benz USA, LLC*,
  2018 WL 4071155 (E.D. Mo. Aug. 27, 2018) .......................................................... 20

*Evergreen Partnering Grp. v. Pactiv Corp.*,
  2014 WL 304070 (D. Mass. Jan. 28, 2014) ........................................................ 23

*Falk v. Nissan N. Am., Inc.*,
  2018 WL 2234303 (N.D. Cal. May 16, 2018) ..................................................... 28

*Garick v. Mercedes-Benz USA, LLC*,
  2019 WL 3815178 (D. Mass. Mar. 29, 2019) ..................................................... 24

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
  2005 WL 6778678 (N.D. Ohio Feb. 22, 2005) .................................................... 25

*Georgine v. Amchem Prods., Inc.*,
  83 F.3d 610 (3d Cir. 1996) .................................................................................. 23

*Gisairo v. Lenovo (United States) Inc.*,
  516 F. Supp. 3d 880 (D. Minn. 2021) .................................................................. 28

*Goodrich v. E.F. Hutton Grp., Inc.*,
  542 A.2d 1200 (Del. Ch. 1988) ........................................................................... 22

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
  525 F. App'x 94 (3d Cir. 2013) ........................................................................... 21

*Hadley v. Chrysler Grp., LLC*,
  624 F. App'x 374 (6th Cir. 2015) ................................................................... 9, 13

*Hafez v. Equifax Info. Servs., LLC*,
  666 F. Supp. 3d 455 (D.N.J. 2023) ...................................................................... 11

*Hardt v. Chrysler Grp., LLC*,
  2015 WL 12683963 (C.D. Cal. Mar. 16, 2015) ................................................... 25

*Hook v. Whiting Door Mfg. Corp.*,
  2016 WL 3676812 (W.D. Pa. July 6, 2016) ........................................................ 30

*Hope v. Nissan N. Am., Inc.*,
  353 S.W.3d 68 (Mo. App. 2011) ......................................................................... 24

*Humphries v. Harley-Davidson Inc.*,
  2025 WL 1836703 (D.S.C. July 3, 2025) ............................................................ 29

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018) ..................................................................... 7, 9, 14

*In re McNeil Consumer Healthcare*,
  877 F. Supp. 2d 254 (E.D. Pa. 2012) .................................................................. 11

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002) ............................................................................... 18

*In re Rust-Oleum Restore Mktg., Sales Practices & Products Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) .................................................................. 20

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012) ............................................................................... 14

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) .......................................................................... 15, 16

*Inst. for Env't Health, Inc. v. Nat'l Beef Packing Co., LLC*,
   2024 WL 5117412 (D. Del. Dec. 16, 2024) ......................................................... 18

*Int'l Business Machines Corp. v. Priceline Group Inc.*,
   2017 WL 1349175 (D. Del. Apr. 10, 2017) .......................................................... 18

*Johnsen v. Honeywell Int'l Inc.*,
   2016 WL 1242545 (E.D. Mo. Mar. 29, 2016) ...................................................... 19

*Katz v. Fiat/Chrysler Automobiles*,
   2015 WL 2452419 (M.D. Pa. May 21, 2015) ............................................ 8, 12, 13

*Kommer v. Ford Motor Co.*,
   2017 WL 3251598 (N.D.N.Y. July 28, 2017) ...................................................... 10

*Kopczick v. Hobart Corp.*,
   308 Ill. App. 3d 967 (1999) ................................................................................. 30

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ......................................................................... 12

*Letson v. Ford Motor Co.*,
   2024 WL 845844 (E.D. Mich. Feb. 28, 2024) .................................................... 10

*Lind v. New Hope Prop., LLC*,
   2010 WL 1493003 (D.N.J. Apr. 13, 2010) .......................................................... 27

*Long v. Hewlett-Packard Co.*,
   316 F. App'x 585 (9th Cir. 2009) ........................................................................ 23

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004) ................................................................................ 17

*Marshall v. Priceline.com Inc.*,
   2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006) ........................................ 21, 22

*Maugain v. FCA US LLC*,
   2023 WL 1796113 (D. Del. Feb. 7, 2023) .......................................................... 21

*May v. Makita U.S.A., Inc.*,
   2023 WL 417487 (E.D. Mo. Jan. 26, 2023) ....................................................... 27

*McCabe v. Ford Motor Co.*,
   720 F. Supp. 3d 14 (D. Mass. 2024) ................................................................... 26

*McGee v. Mercedes-Benz USA, LLC*,
   612 F. Supp. 3d 1051 (S.D. Cal. 2020) ............................................................... 24

*McMahon v. Volkswagen Aktiengesellschaft*,
   2023 WL 4045156 (D.N.J. June 16, 2013) ......................................................... 21

*McNair v. Synapse Group Inc.*,
   672 F.3d 213 (3d Cir. 2012) ........................................................................... 13, 14

*Medley v. Johnson & Johnson*,
   2011 WL 159674 (D.N.J. Jan. 18, 2011) ........................................ 8

*Midwest Printing, Inc. v. AM Int'l, Inc.*,
   108 F.3d 168 (8th Cir. 1997) ........................................ 26

*Miller v. Lewis Univ.*,
   553 F.Supp.3d 678 (N.D. Ill. 2021) ........................................ 27

*Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*,
   691 F. Supp. 3d 1113 (N.D. Cal. 2023) ........................................ 27

*N. Ins. Co. of N.Y. v. Silverton Marine Corp.*,
   2010 WL 2574225 (N.D. Ill. June 23, 2010) ........................................ 24

*Ocampo v. Apple Inc.*,
   2022 WL 767614 (N.D. Cal. Mar. 14, 2022) ........................................ 24

*Orichian v. BMW of N. Am., LLC*,
   226 Cal. App. 4th 1322 (2014) ........................................ 26

*Pacheco v. Ford Motor Co.*,
   2023 WL 2603937 (E.D. Mich. Mar. 22, 2023) ........................................ 9

*Pagliaroni v. Mastic Home Exteriors, Inc.*,
   310 F. Supp. 3d 274 (D. Mass. 2018) ........................................ 28

*Peckerar v. Gen. Motors, LLC*,
   2020 WL 5289919 (C.D. Cal. May 27, 2020) ........................................ 9

*Perez v. Auto Tech. Co.*,
   2014 WL 12591484 (C.D. Cal. Apr. 18, 2014) ........................................ 30

*Ponzio v. Mercedes-Benz USA, LLC*,
   447 F. Supp. 3d 194 (D.N.J. 2020) ........................................ 15, 16

*Pro. Sports Servs. FI OY v. Grossman*,
   770 F. Supp. 3d 394 (D. Mass. 2025) ........................................ 23

*Rule v. Fort Dodge Animal Health, Inc.*,
   604 F. Supp. 2d 288 (D. Mass. 2009) ........................................ 24

*Russell v. Walmart, Inc.*,
   680 F. Supp. 3d 1130 (N.D. Cal. 2023 ........................................ 28

*Senju Pharm. Co. v. Apotex, Inc.*,
   921 F. Supp. 2d 297 (D. Del. 2013) ........................................ 18

*Serrano v. Campbell Soup Co.*,
   2025 WL 926394 (D.N.J. Mar. 27, 2025) ........................................ 14

*Shoner v. Carrier Corp.*,
   30 F.4th 1144 (9th Cir. 2022) ........................................ 27

*Silva v. Rite Aid Corp.*,
   416 F. Supp. 3d 394 (M.D. Pa. 2019) ........................................ 14

*Snowdy v. Mercedes-Benz USA, LLC,*
  2024 WL 1366446 (D.N.J. Apr. 1, 2024) ...................................................... 15, 16, 20

*Solak v. Ford Motor Co.,*
  683 F. Supp. 3d 658 (E.D. Mich. 2023) ........................................................ 10, 13

*Spacone v. Sanford, L.P.,*
  2018 WL 4139057 (C.D. Cal. Aug. 9, 2018) ......................................................... 12

*Sparks v. PNC Bank,*
  400 S.W.3d 454 (Mo. Ct. App. 2013) ............................................................. 28, 29

*Speerly v. Gen. Motors, LLC,*
  143 F.4th 306 (6th Cir. 2025) ........................................................................... 25

*Spera v. Samsung Elecs. Am., Inc.,*
  2014 WL 1334256 (D.N.J. Apr. 2, 2014) ............................................................. 21

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ..................................................................................... 6, 7

*Sudicky v. Allied Tube & Conduit,*
  1999 WL 982422 (N.D. Ill. Oct. 22, 1999) ........................................................... 28

*Sugasawara v. Ford Motor Co.,*
  2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ......................................................... 9

*Sutherland v. Elpower Corp.,*
  923 F.2d 1285 (8th Cir. 1991) .......................................................................... 30

*Sweeny v. Toyota Motor Sales, U.S.A., Inc.,*
  2023 WL 4681567 (C.D. Cal. June 13, 2023) ........................................................ 21

*Thorne v. Pep Boys Manny Moe & Jack Inc.,*
  980 F.3d 879 (3d Cir. 2020) ............................................................................ 14

*Tokar v. Crestwood Imports, Inc.,*
  177 Ill. App. 3d 422 (1988) ............................................................................ 24

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ..................................................................................... 6, 7

*Utica Nat. Ins. Grp. v. BMW of N. Am., LLC,*
  45 F. Supp. 3d 157 (D. Mass. 2014) ............................................................... 19, 20

*Van Zeeland v. Rand McNally,*
  532 F. Supp. 3d 557 (N.D. Ill. 2021) .................................................................. 28

*VMark Software, Inc. v. EMC Corp.,*
  37 Mass. App. Ct. 610 (1994) .......................................................................... 30

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,*
  901 A.2d 106 (Del. 2006) ............................................................................... 22

*White v. Cadkey Corp.,*
  2019 WL 5588954 (D. Mass. July 8, 2019) ...................................................... 28, 29

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ................................................................... 19, 20

*Xi Chen Lauren v. PNC Bank, N.A.*,
   296 F.R.D. 389 (W.D. Pa. 2014) ............................................................... 15, 16

*Zapata Fonseca v. Goya Foods Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .................................................. 27

**Statutes**

6 *Del. C.* § 2512 .............................................................................................. 21

**Other Authorities**

https://www.cpsc.gov/s3fs-public/254_ResellersGuide_2-5-25.pdf ........................... 11

https://www.cpsc.gov/s3fs-public/8002.pdf ............................................................ 12

Mass. Gen. Laws ch. 93A, § 11 ........................................................................... 22

## **INTRODUCTION**

In February 2025, Igloo Products Corp. ("Igloo") conducted an expansive recall of over one million coolers due to the remote risk that a consumer could injure themselves by pinching their finger on the handle of the cooler. Igloo initiated the recall after receiving a mere *twelve* consumer complaints of pinching injuries and then offered to provide every consumer a free replacement handle that remediates this risk. Plaintiffs do not claim that the replacement handle is defective or fails to mitigate the risk of pinching. On the contrary, they concede they have no basis to challenge the efficacy of the replacement handle—which the Consumer Products Safety Commission affirmatively approved. Nonetheless, Plaintiffs chose to bring this sweeping class action on the grounds that they—along with every consumer who purchased a recalled cooler—overpaid at the point of sale by virtue of the pinching risk that led to the recall. In other words, Plaintiffs believe they can be compensated for a risk that no longer exists. They are wrong.

At the outset, the four Plaintiffs who never pinched their finger have not demonstrated any cognizable injury under Article III. These Plaintiffs have never been injured by their coolers, have never incurred any out-of-pocket costs attributable to their coolers, and do not even face a risk of future harm from their coolers. While they nevertheless persist in claiming they overpaid for their coolers, courts have repeatedly and resoundingly rejected claims of overpayment predicated on a product defect where—as here—the defect has been remediated by a recall. As these courts have explained, if the defect is eliminated, so too is the overpayment. These Plaintiffs therefore lack standing under Article III and all of their claims must be dismissed under Rule 12(b)(1).

In addition, the particular causes of action pled in the operative Complaint all fail under Rule 12(b)(6) because Plaintiffs do not plead facts plausibly establishing the elements of those claims. For instance, Plaintiffs have not pled their consumer fraud claims with the particularity required by Rule 9(b) because they fail to adequately plead the "who" of the alleged fraud and

because they fail to plead any facts plausibly demonstrating Igloo's pre-sale knowledge of the alleged defect. They have not pled the basic elements of an express and implied warranty claim because they have not demonstrated that the alleged defect manifested within the one-year warranty period and because they have not pled either that they requested any repair from Igloo or that Igloo ever failed to conduct a repair in accordance with the warranty. They have not pled an unjust enrichment claim because they have an adequate remedy at law in the form of their express warranty claim and because they have not identified any benefit that Igloo has unjustly retained in the face of the recall. And they have not come close to pleading the type of willful and knowing misconduct required to sustain a claim for punitive damages.

Accordingly, and for the reasons discussed in more detail below, the Court should dismiss Plaintiffs' claims in their entirety under Rule 12(b)(1) and/or Rule 12(b)(6).

## FACTUAL BACKGROUND

As set forth in Plaintiffs' Consolidated Class Action Complaint (the "CAC"), "Igloo is perhaps the most instantly-recognizable brand name for ice chests, coolers, food and drink containers, and similar products in the nation." CAC at ¶ 1. Indeed, Igloo has been "delivering Coolness to the World" for over 75 years. *Id*. at n.1 (hyperlink to Igloo article). One of the many products invented by Igloo is the rolling cooler, which has wheels and handles that allow consumers to transport the coolers in an easy and convenient manner. *Id.* at ¶ 3. Amongst the various types of rolling coolers that Igloo sells is a cooler known as the "Flip & Tow 90 Quart Cooler." *Id*. at ¶ 4. As the name implies, these are large 90 quart coolers containing a unique "flip-up tow handle" that "reduces towing force by up to 50%." *Id.* at ¶ 37.

On February 13, 2025, after receiving only *twelve* consumer complaints of fingertip injuries associated with the flip-up tow handle, Igloo conducted an expansive recall of over one million Flip & Tow 90 Quart Coolers (the "Recall"). *Id.* at ¶ 5. Igloo then expanded the Recall on

May 8, 2025 to include additional SKU numbers, covering a total of 1.2 million coolers (the "Coolers"). *Id.* at ¶ 6. As set forth in the Recall notice published by the Consumer Product Safety Commission ("CPSC"), the Recall was conducted due to the risk that the tow handle "can pinch consumers' fingertips against the cooler." *Id*. at ¶ 4. The CPSC identifies this risk as a "hazard" (*see id*. at n.3), whereas Plaintiffs refer to it as an alleged "Defect" (*id*. at ¶ 4).

To prevent the risk of pinching going forward, Igloo has offered all consumers a free replacement handle (the "Replacement Handle"). *Id.* at ¶ 11. The Replacement Handle removes the "pinch point risks" by increasing the "space near the hinge" and by providing "enhanced plastic ribbing." *Id.* at ¶ 51. To facilitate the installation of the Replacement Handle, the CPSC instructs consumers to contact Igloo to receive the free Replacement Handle. *Id.* at ¶ 41. In other words, as part of the recall process, the remedy *approved* by the CPSC contemplates consumers obtaining and installing the Replacement Handle themselves. *Id.* Igloo allegedly estimates that the process for both registration and receipt of the Replacement Handle takes a mere 2-4 weeks. *Id*. at ¶ 13.[1]

Critically, Plaintiffs do not claim that the Replacement Handle fails to remedy the hazard identified in the Recall notice or that the risk of pinching remains once the Replacement Handle is installed. On the contrary, Plaintiffs openly concede that they have no basis for challenging the efficacy of the Replacement Handle—claiming that it "*remains to be seen* whether the Replacement Handle Kit will fully remedy the defect." *Id*. at ¶ 12 (emphasis added); *see also id*. at ¶ 53 (alleging same). Thus, based on the facts as pled, Plaintiffs effectively concede that the Replacement Handle removes the alleged "Defect" in the Coolers. At a minimum, they have

---

[1] Although the CAC claims elsewhere that the recall process does not inform consumers when they can expect their Replacement Handle to arrive (*id*. at ¶ 52), Plaintiffs contradict that allegation by specifying that "Igloo estimates that the process for registration and receipt of a replacement handle kit will take between two and four weeks" (*id.* at ¶ 13).

conceded that they have no basis to claim otherwise.

Notwithstanding the efficacy of the Replacement Handle, six named Plaintiffs filed this putative class action claiming that they suffered an economic loss arising from the purchase of their Coolers "in the form of overpayment and diminution in value." *Id*. at ¶ 48. Outside of this alleged overpayment, none of the Plaintiffs identify any economic losses that they attribute to their Coolers. *Id*. at ¶¶ 59-100. Moreover, as identified below, four of the six Plaintiffs do not claim that they ever pinched their fingers on the handle of their Coolers.

The particulars of each named Plaintiff are as follows:

- Plaintiff Zannettino ("Zannettino") resides in California and purchased his Cooler from a Costco in California in September 2023. *Id*. at ¶¶ 59-60. He does not claim to have experienced any pinching issues with his Cooler, nor does he claim to have applied for a Replacement Handle.

- Plaintiff Castellano ("Castellano") resides in California and purchased his Cooler from a Costco in California in October 2022. *Id*. at ¶¶ 65-77. He does not claim to have experienced any pinching issues with his Cooler, although he claims his son pinched his finger at one point without "any lasting injury." *Id.* at ¶ 69. He did receive the Replacement Handle but has apparently chosen not to install it. *Id*. at ¶ 71.

- Plaintiff Nguyen ("Nguyen") resides in California and purchased her Cooler from a Walmart in late 2022. *Id.* at ¶¶ 74-75. She claims to have experienced pinching issues but does not claim to have applied for a Replacement Handle. *Id*. at ¶ 77.

- Plaintiff Barragan ("Barragan") resides in California and purchased his Cooler from a Dick's Sporting Good in California in July 2023. *Id.* at ¶¶ 82-83. He claims to have experienced pinching issues but does not claim to have applied for a Replacement Handle. *Id.* at ¶ 85.

- Plaintiff Trainor ("Trainor") resides in Massachusetts and purchased her Cooler from a Target in Missouri in July 2023. *Id.* at ¶¶ 89-90. She does not claim to have experienced any pinching issues with her Cooler, nor does she claim to have applied for a Replacement Handle.

- Plaintiff Riffle ("Riffle") resides in Illinois and purchased her Cooler from a Dick's Sporting Goods in Illinois in July 2023. *Id.* at ¶¶ 95-96. Riffle does not claim to have experienced any pinching issues with her Cooler, nor does she claim to have applied for a Replacement Handle.

Based on these allegations, Plaintiffs bring multiple causes of action on behalf of

themselves and various putative classes. Specifically, all Plaintiffs bring claims for violation of the Magnuson-Moss Warranty Act ("MMWA") (Count I) and the Delaware Consumer Fraud Act ("DCFA") (Count II) on behalf of themselves and a putative nationwide class. All Plaintiffs bring claims for breach of express warranty (Count III), breach of implied warranty (Count IV), and unjust enrichment (Count V) on behalf of themselves and putative state subclasses from California, Illinois, Missouri, and Massachusetts. Plaintiffs Zannettino, Castellano, Nguyen, and Barragan bring claims for violation of the Song-Beverly Act (Count VI), the California Consumer Legal Remedies Act ("CLRA") (Count VII), the California False Advertising Law ("FAL") (Count VIII), and the California Unfair Competition Law ("UCL") (Count IX) on behalf of themselves and a putative California state subclass. Plaintiff Trainor brings a claim for violation of the Massachusetts Consumer Protection Act ("MCPA") (Count X) on behalf of herself and a putative Massachusetts state subclass, as well as a claim for violation of the Missouri Merchandise Practices Act ("MMPA") (Count XI) on behalf of herself and a putative Missouri state subclass. And Plaintiff Riffle brings claims for violation of the Illinois Consumer Fraud Act ("ICFA") (Count XII) and the Illinois Uniform Deceptive Trade Practice Act ("IUDTPA") (Count XIII) on behalf of herself and a putative Illinois state subclass.[2]

As discussed below, Plaintiffs' claims fail for a variety of reasons.

## **LEGAL STANDARD**

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[2] The DCFA, CLRA, UCL, FAL, MCPA, MMPA, ICFA, and IUDTPA claims are collectively referred to as the "Consumer Fraud Claims."

for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Factual allegations must be sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Moreover, while courts must accept all well-pleaded allegations as true, they are not required to accept "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678-79 (quoting *Twombly*, 550 U.S. at 555). As the Supreme Court has made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id*.

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING FOR MULTIPLE REASONS

#### A.    Most Plaintiffs Lack a Concrete Injury Under Article III

##### 1.    Four Plaintiffs Did Not Incur Any Cognizable Economic Loss

Article III demands that a plaintiff "have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing [standing]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet this burden at the pleading stage, the plaintiff must "clearly [] allege facts demonstrating each element" of standing. *Id.*

Standing under Article III consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. "[F]irst and foremost' of standing's three elements" is the injury in fact requirement. *Id.* If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion*, 594 U.S. at 423. To establish an injury in fact, a plaintiff must show that the injury is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Spokeo*, 578 U.S. at 339. That means the injury "must actually exist" and is not merely "abstract." *Id.* at 340. To that end, the Supreme Court has made abundantly clear

that a "mere risk of future harm" is not sufficient to demonstrate standing in a suit for damages. *TransUnion*, 594 U.S. at 436. Moreover, "[t]hat a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 578 U.S. at 338 n.6.

Applying these principles to claims for economic loss, the Third Circuit has held that a plaintiff must "do more than simply pair a conclusory assertion of money lost with a request that a defendant pay up." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) (hereafter "*Johnson & Johnson*"). Even at the pleading stage, "a plaintiff must set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that she suffered at least *some* economic injury." *Id.* at 287 (emphasis in original). A plaintiff cannot meet this burden merely by claiming that they purchased a product and "later wished they had not done so." *Id.* at 288. Nor can they claim that they "purchased a product that a consumer would view as flawed." *Id.* at 287. Rather, where benefit-of-the bargain damages are alleged, the plaintiff must plead facts sufficient to show that the economic benefit they received "was worth less than the economic benefit for which [they] bargained." *Id.* at 285.

In light of this, the court in *Johnson & Johnson* held that the plaintiff had not established a cognizable economic injury based simply on her purchase of "unsafe" baby powder that could allegedly cause cancer. *Id.* at 289. Although the plaintiff had argued that the "unsafe" nature of the powder meant she did not receive the benefit of her bargain, the plaintiff had not actually developed cancer and had not even alleged that she could develop cancer in the future. *Id.* at 289-90. Thus, "the powder she received was, in fact, *safe as to her*" and therefore provided her with the precise economic benefit for which she bargained. *Id.* at 289 (emphasis in original).

District Courts in the Third Circuit have reached similar conclusions. For instance, in *Katz v. Fiat/Chrysler Automobiles*, the court held that the plaintiff did not allege a cognizable economic injury based on the mere purchase of a vehicle later subject to an allegedly insufficient recall. 2015 WL 2452419, at *2 (M.D. Pa. May 21, 2015). The court reasoned that "the claimed safety issues were never manifest in [the plaintiff's vehicle]," the plaintiff "never suffered any physical harm resulting from the alleged vehicle's defect," and the plaintiff did not allege "that he personally suffered any out-of-pocket economic loss as a result of the purportedly inadequate recall." *Id.* Likewise, in *Medley v. Johnson & Johnson*, the court held that the plaintiff did not clear the "threshold requirement for showing economic injury" based on the mere purchase of allegedly unsafe shampoo. 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011). While the court accepted the plaintiffs' allegations that they would not have purchased the shampoo had they known of the alleged health risks, it held that their claims of economic harm did "not follow" because the product worked as intended without causing them any "adverse health consequences." *Id.*

Here too, Plaintiffs Zannettino, Castellano, Trainor, and Riffle (the "Uninjured Plaintiffs") have not suffered any adverse consequences attributable to their Coolers. They do not claim that they ever pinched their fingers or incurred any other type of physical harm from their Coolers. They do not claim that their Coolers ever malfunctioned or failed to cool their food and beverages as intended. They do not claim that they ever incurred any out-of-pocket costs attributable to their Coolers. And they cannot claim that they are at risk of impending future harm because the Replacement Handle remedies the alleged "Defect" such that they can continue to use their Coolers safely and effectively in the future.[3] Thus, the economic benefit they received from their Coolers

---

[3] To the extent the Uninjured Plaintiffs have chosen not to take advantage of the Replacement Handle, that is irrelevant because a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly

is the precise benefit for which they bargained—a cooler that functions as intended and that was, and will be, safe *as to them*. Under these circumstances, governing Third Circuit law provides that the Uninjured Plaintiffs have not incurred any cognizable economic harm and therefore cannot establish standing under Article III. *See Johnon & Johnson*, 903 F.3d at 290.

2.  The Recall Defeats Plaintiffs' Overpayment Theory

Notwithstanding their lack of any adverse consequences, the Uninjured Plaintiffs persist in claiming that they "suffered an economic loss at the moment of their purchase of the … Coolers in the form of overpayment and diminution in value." CAC at ¶ 48; *see also id.* at ¶¶ 63, 72, 99, 99. Apparently, in their view, the mere existence of the *former* "Defect" gives rise to a per se overpayment. *Id*. However, courts have held time and time again that "as a matter of common sense … the economic loss injury based on [a product's] decreased value *no longer exists* if [the] [d]efendant has, through the recall, offered to remove the complained-of defect free of charge." *Peckerar v. Gen. Motors, LLC*, 2020 WL 5289919, at *2 (C.D. Cal. May 27, 2020) (emphasis added); *see also Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) ("If the post-recall remedy Vehicles perform as they would without the Defect, then it follows that the Vehicles' pre-defect values have likewise been restored."); *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015) ("[T]he repair of the ORC Module that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based."); *Pacheco v. Ford Motor Co.*, 2023 WL 2603937, at *5 (E.D. Mich. Mar. 22, 2023) ("[T]he recall, which remedies the Spontaneous Fire Risk defect, moots Plaintiffs' overpayment claim because it 'remove[s] the defect upon which the plaintiffs' diminished-value injury claim is

___

impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). As the Court explained in *Comes v. Harbor Freight Tools, USA, Inc.* when confronted with a similar circumstance, any injury on Plaintiffs' part in failing to obtain the Replacement Handle would be due "to [their] own choice not to pursue the recall remedy." 2021 WL 6618816 at * 5 (C.D. Cal. Sept. 29, 2021).

based.'"); *Letson v. Ford Motor Co.*, 2024 WL 845844, at *3 (E.D. Mich. Feb. 28, 2024) ("But Ford's recall measures would remediate the very same 'defect upon which' the 'diminished-value injury claims are based,' thereby restoring their vehicle's values and eliminating plaintiffs' overpayment injuries.").[4] Indeed, in each of these cases, the courts emphatically rejected assertions of overpayment and/or diminution in value precisely because the defendant's recall had restored the products' value and thereby eliminated the alleged overpayment injury.

As in the above cases, Plaintiffs here concede that Igloo conducted a voluntary recall with the CPSC to prevent the potential for pinching at the tow handle. CAC at ¶¶ 39-40. The Recall involved providing consumers with the Replacement Handle, which "addresses both pinch point risks" by increasing the spacing near the hinge and by providing enhanced plastic ribbing. *Id*. at ¶¶ 50-51. In other words, the Recall resolves the precise "Defect" that forms the basis for Plaintiffs' overpayment theory. *Id*. at ¶ 4 (defining the alleged "Defect" as a "tow handle that can pinch consumers' fingertips against the cooler"). Accordingly, as in the many cases cited above, Igloo's Recall has restored any alleged loss in the Coolers' value and has thereby eliminated the alleged overpayment injury that forms the basis for the Uninjured Plaintiffs' professed economic harm.

### 3.  Plaintiffs' Contrived Complaints About the Recall Are Immaterial

Acknowledging the paucity of their overpayment claims, the Uninjured Plaintiffs claim that the Recall "fails to cure" their alleged economic loss. *Id.* at ¶ 49. In support, they proffer four

---

[4] *See also Solak v. Ford Motor Co*., 683 F. Supp. 3d 658, 664 (E.D. Mich. 2023) (rejecting claims of overpayment "when Ford's recall measures would remediate the *very same* 'defect upon which' the 'diminished-value injury claim[s] [are] based'"); *Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1379 (N.D. Ga. 2023) ("Recall ZB7 promises to remove the very defect that forms the basis of Plaintiffs' diminished-value claim. … As a result, Recall ZB7 provides the exact relief (both equitable and monetary) Plaintiffs seek through the FAC."); *Comes*, 2021 WL 6618816 at *5 (where the plaintiff's only injury amounted to the "money he paid for a defective product…. the NHTSA-backed recall fully redresses this injury"); *Kommer v. Ford Motor Co*., 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) ("Kommer has a perfectly adequate remedy available to him, and that defeats his price-premium theory of injury.").

contrived complaints: (1) consumers purportedly cannot sell the Coolers, (2) consumers must wait 2-4 weeks to receive the Replacement Handle, (3) they are afraid that installing the Replacement Handle is "potentially dangerous," and (3) "it remains to be seen whether the Replacement [Handle] will remedy the problem." *Id*. at ¶¶ 50-53. These arguments are facially unpersuasive and fail to provide any basis for the Uninjured Plaintiffs to allege a cognizable economic loss.

As to the contention that consumers supposedly cannot sell their Coolers, that is a classic red herring. The CPSC warns consumers not to sell recalled products "*unless the products have been repaired in accordance with the recall*."[5] In other words, once a product is repaired, consumers are free to sell it as they wish. Thus, once the Replacement Handle is installed, Plaintiffs are free to sell their Coolers just as they could at the time of purchase. Indeed, at that juncture the Coolers are no longer considered a "recalled product" by the CPSC. And as set forth in n. 3 *supra*, if Plaintiffs choose not to obtain the Replacement Handle, any such injury would be one of their own making and does not provide a basis for asserting harm.

As to the mere 2-4 week wait time, none of the Uninjured Plaintiffs claim to have incurred any out-pocket-costs as a result of this wait (in fact, none claim to have even incurred the wait at all). For instance, they do not claim that they purchased a replacement cooler while they waited for the Replacement Handle. Nor do they claim that they incurred any other type of expense by virtue of this wait time. Thus, all that Plaintiffs have alleged is a mere transitory inconvenience— one divorced from any actual economic loss. That is not sufficient to give rise to a cognizable injury. *See In re McNeil Consumer Healthcare,* 877 F. Supp. 2d 254, 273 (E.D. Pa. 2012) ("A

---

[5] *See* https://www.cpsc.gov/s3fs-public/254_ResellersGuide_2-5-25.pdf (explaining a consumer "cannot sell or offer for sale … products that have been recalled by the CPSC (*unless the products have been repaired in accordance with the recall*)" (emphasis added)). The Court judicially notice this CPSC webpage as it constitutes "information published to [a] government website[]." *Hafez v. Equifax Info. Servs., LLC*, 666 F. Supp. 3d 455, 458 (D.N.J. 2023).

named plaintiff must allege facts showing that he or she personally suffered economic loss as a result of an inadequate recall to state a cognizable injury on the basis of a recalled product."); *Katz*, 2015 WL 2452419, at *2 (the fact that a recall "inconvenienced" the plaintiff, including by requiring him to take his vehicle to the dealer, is not a "cognizable injury"). As the court observed in *Spacone v. Sanford, L.P.*, "mere inconvenience" is not an economic injury because "wasted time does not equal lost money or property." 2018 WL 4139057, at *4 (C.D. Cal. Aug. 9, 2018).[6]

As to Plaintiffs' supposed concerns with installing the Replacement Handle, that is equally deficient. Outside of their subjective and speculative allegation that the installation is "potentially dangerous," (CAC at ¶ 53), Plaintiffs do not proffer a single *factual* allegation plausibly demonstrating that installing the Replacement Handle poses a safety risk to them. For instance, they do not claim that a single consumer has ever injured themselves while installing the Replacement Handle. Nor do they claim that they themselves ever came close to incurring an injury while doing so. This is especially problematic because the CPSC affirmatively agreed to the recall process—meaning the CPSC itself does not believe that the installation process poses any risk to consumers.[7] Thus, all that the Uninjured Plaintiffs have proffered is "[f]ear and apprehension about a possible future physical or medical consequence." *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010). As the Third Circuit has reiterated, that "is not enough to establish an injury in fact." *Id.* (rejecting plaintiff's "subjective allegation that the trace

---

[6] While it is not clear to Igloo if Plaintiffs' overpayment theory is also predicated on an allegedly inadequate notice process (a process overseen by the CPSC), any such theory would likewise fail for a similar reason. That is, Plaintiffs themselves are plainly aware of the Recall and do not (and cannot) claim to have suffered any economic loss as a result of the allegedly inadequate notice.

[7] *See* https://www.cpsc.gov/s3fs-public/8002.pdf ("***Once the staff*** and a company ***agree*** on a remedy to correct a product defect, the staff works with the company to put together an effective plan for public notification and implementation of the recall." (emphasis added)). As discussed *supra*, the Court may take judicial notice of information published by the CPSC.

amounts of lead in the lipsticks are unacceptable to her"); *see also Katz*, 2015 WL 2452419, at *2.

Finally, as to the assertion that the efficacy of the Replacement Handle "remains to be seen," that too is woefully insufficient. As noted, Plaintiffs do not allege that the Replacement Handle fails to remediate the alleged "Defect." In fact, they do not even speculate as much. On the contrary, in claiming that this "remains to be seen," Plaintiffs outright concede they have no basis to challenge the efficacy of the Replacement Handle and are merely postulating about future hypothetical possibilities. It is black letter law, however, that "hypothetical future harms" do not suffice to establish standing. *Clapper*, "568 U.S. at 1141. Indeed, in this precise circumstance, courts have repeatedly rejected claims of economic injury based on the "hypothetical possibility" that a recall remedy is insufficient. *Solak*, 683 F. Supp. 3d at 664 (noting that this falls "well short of a "cognizable danger"; *see also Diaz v. Ford Motor Co.*, 2023 WL 6164455, at *3-4 (E.D. Mich. Sept. 21, 2023) ("The possibility that the recall repair will fail to fix the problem is not sufficiently concrete to constitute an injury in fact."); *Hadley*, 624 F. App'x at 380 ("The plaintiffs' assertion that the ORC Module repair may not be effective does not evidence an actual or imminent injury."). As such, this postulating does not provide any basis to assert a cognizable harm.

In sum, given the existence of the Recall and the unchallenged efficacy of the Replacement Handle, the Uninjured Plaintiffs' overpayment theory (along with any other theory of harm) fails on its face. As such, the Court lacks jurisdiction over the claims of the Uninjured Plaintiffs.

### B.    All Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs seek "permanent injunctive relief" against Igloo. *See* CAC at p. 1. To establish standing to obtain injunctive relief, "the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012). Pursuant to this standard, the Third Circuit has repeatedly held that a plaintiff does not have standing to seek injunctive relief based on a defendant's allegedly deceptive advertising practices

when the plaintiffs "are familiar with [those] practices." *Id.* at 225; *see also Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020); *Johnson & Johnson*, 903 F.3d at 292. This is because "the law accords people the dignity of assuming that they act rationally, in light of the information they possess" and will not presume that a plaintiff is likely to be "fooled again and again." *McNair*, 672 F.3d at 225. Accordingly, any future injury in this circumstance would be "wholly conjectural … and cannot[] satisfy the constitutional requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future harm." *Id.*; *see also Johnson & Johnson*, 903 F.3d at 292 ("Because Estrada makes clear in this very lawsuit that she is well aware of health risks associated with using Baby Powder, we readily conclude that she is not likely to suffer future economic injury.").[8] As set forth in *Thorne*, a request for injunctive relief here "amounts to a 'stop me before I buy again' claim' that precludes Article III standing." 980 F. 3d at 896.

Here too, Plaintiffs are plainly aware of the allegedly deceptive practices that form the basis for their claims in this suit. Because the law accords them the dignity of assuming that they will act rationally in light of the information they possess, they cannot claim that these alleged practices are likely to fool them in the future. Accordingly, any alleged future injury on Plaintiffs' part is merely conjectural and cannot suffice to establish standing to seek injunctive relief.

## C.    Trainor Lacks Standing to Bring Class Claims Under Massachusetts Law

It is well settled that standing may not be "dispensed in gross." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012). As such, a plaintiff who raises multiple claims "must demonstrate standing for each claim he seeks to press." *Id.*

---

[8] *See also Carson v. HP Inc.*, 750 F. Supp. 3d 376, 388 (D. Del. 2024) ("If the named Plaintiffs did buy such a laptop in the future, that would be their own choice, and it would be a decision that they made with full knowledge of the prior defects that they had previously experienced regarding similar products."); *Serrano v. Campbell Soup Co.*, 2025 WL 926394, at *15 (D.N.J. Mar. 27, 2025); *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394, 400 (M.D. Pa. 2019).

(quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "The requirement of a named plaintiff's standing is no different in the class action context." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009). Thus, in the class context, each named plaintiff must demonstrate standing on a "claim by claim" basis. *Id.* "[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one plaintiff has suffered the injury that gives rise to that claim." *Id.*

Applying these principles, courts in this Circuit have repeatedly held that a named plaintiff does not have standing to assert claims under the laws of a state in which they were not injured. *Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 390 (W.D. Pa. 2014) (agreeing that the plaintiff "does not have standing to assert … claims from a state in which she was not injured"); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) ("Plaintiffs lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury."); *Snowdy v. Mercedes-Benz USA, LLC*, 2024 WL 1366446, at *4 (D.N.J. Apr. 1, 2024) (agreeing that "named plaintiffs 'lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where plaintiffs have suffered no alleged injury'"). As the court in *In re Wellbutrin* explained, "[a] named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim. For example, a plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law, although it may have standing under the law of another state." 260 F.R.D. at 152.

Accordingly, courts will dismiss those class claims brought under the laws of states where the plaintiffs lack standing. *See Ponzio*, 447 F. Supp. 3d at 223 (dismissing "multi-state specific claims to the extent they are brought on behalf of putative class members outside of the six states

represented by named Plaintiffs"); *Xi Chen Lauren*, 296 F.R.D. at 390 (dismissing nationwide class allegations because the plaintiff had "suffered an alleged injury exclusively under Ohio law" and therefore did "not have standing to assert [her] claims under the law(s) of any other state"); *Snowdy*, 2024 WL 1366446, at *7 (dismissing claims "to the extent that they are brought on behalf of a proposed nationwide class" because the plaintiffs "can only assert claims on behalf of individuals in states where at least one named Plaintiff has standing for that claim").[9]

As in these cases, Trainor purports to bring claims under the laws of a state in which she was not injured. Specifically, she seeks to bring claims under Massachusetts law—which has absolutely no connection to her claimed injury. As set forth in the CAC, the only injury Trainor alleges is an overpayment that occurred "at the moment of [her] purchase." CAC at ¶ 48; *see also* ¶ 57. Courts have also confirmed that overpayment injuries occur "at the moment of the purchasing [] decision" and not when a plaintiff is "poised to liquidate their assets." *Bristow v. Lycoming Engines*, 2007 WL 1106098, at *6 (E.D. Cal. Apr. 10, 2007). As such, both as a matter of fact and law, Trainor's alleged injury necessarily occurred where she purchased and paid for her Cooler.

Here, Trainor claims she purchased and paid for her Cooler in Missouri. Accordingly, her alleged injury necessarily occurred in Missouri at the moment she purchased her Cooler. By contrast, Trainor did not purchase or pay for any Cooler in Massachusetts. She did not incur any

---

[9] Igloo acknowledges that some courts addressing this issue have also held that a plaintiff also has standing to bring claims under the laws of the state where they reside. However, as *In re Wellbutrin* explained, that should not be permitted where the plaintiff's "injuries have no causal relation to, or cannot be redressed by" the laws of that state. 260 F.R.D. at 152. Notably, the defendant in that case had argued that the plaintiffs only had standing in the states where benefit funds were located while the plaintiff had argued they also had standing in states where they were located. In assessing this argument, the court did not simply presume that plaintiffs had standing to bring claims in states where they were located but instead analyzed the facts alleged in the complaint and only then concluded that it "set forth facts that demonstrate the plaintiffs' standing to bring claims in those states in which they are located." *Id.* at 158.

alleged physical harm from any Cooler while in Massachusetts. She did not incur any out-of-pocket costs or expenses from any Cooler while in Massachusetts. And she does not claim that Igloo engaged in any conduct in Massachusetts that somehow contributed to her injury. Thus, Trainor's alleged injury has absolutely no causal relation to Massachusetts and cannot be redressed by Massachusetts law. In fact, notwithstanding the fact that she resides in Massachusetts, Trainor cannot even invoke the Massachusetts Consumer Protection Act to seek redress against Igloo. *See* Section II(C), *infra*. As such, Trainor lacks standing to pursue claims under Massachusetts law. The Massachusetts class claims must therefore be dismissed.

## II.    THE CONSUMER FRAUD CLAIMS FAIL ON MULTIPLE GROUNDS

### A.    Plaintiffs Have Not Adequately Pled Their Consumer Fraud Claims

#### 1.    Plaintiffs Have Not Adequately Pled the "Who" of the Alleged Fraud

The Third Circuit has held that "fraud must be pled with particularity in *all* claims based on fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 220 (3d Cir. 2004) (emphasis in original). In other words, "Rule 9(b) applies when the 'factual allegations that support a particular legal claim' make clear that the claim—regardless of how it is denominated—is grounded in fraud." *Diaz v. FCA US LLC*, 2022 WL 4016744, at *20 (D. Del. Sept. 2, 2022). As the court explained in *Carson*, "[i]n this Circuit whether Rule 9(b) applies to a claim does not depend on the title of the particular statute that is utilized, nor even on whether fraud is a necessary element of that claim; instead, what matters is whether the factual allegations in the claim as pleaded 'sound in fraud.'" 750 F. Supp. 3d at 389. Here, all of Plaintiffs' Consumer Fraud Claims are undoubtedly grounded in fraud. Indeed, in each of these claims, Plaintiffs specifically allege that Igloo engaged in fraud and/or made alleged "misrepresentations and omissions."[10] Accordingly, all of the Consumer

---

[10] CAC ¶ 161 (DCFA claim alleging "deception, fraud, false present, false promise, misrepresentation, [etc.]…"); ¶ 237 (CLRA claim alleging "false and misleading acts"); CAC ¶¶

Fraud Claims must be pled with the particularity required by Rule 9(b).

To plead a claim with particularity, a plaintiff must identify the "who, what, when, where and how" of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002). Applying this standard, courts in this Circuit have repeatedly held that "identifying a corporation rather than an individual is not enough to satisfy Rule 9(b)'s particularity requirement." *Inst. for Env't Health, Inc. v. Nat'l Beef Packing Co., LLC*, 2024 WL 5117412, at *7 (D. Del. Dec. 16, 2024); *see also Int'l Business Machines Corp. v. Priceline Group Inc.*, 2017 WL 1349175, at *8 (D. Del. Apr. 10, 2017) (holding that Rule 9(b) requires a plaintiff to identify "the specific individual" engaged in the fraud and that allegations "directed against the corporate entities 'IBM' and 'Trintex'" do not suffice); *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 307 (D. Del. 2013) (plaintiff's "inclusion of general entities, Senju Pharma and Kyorin, in the pleadings does not permit the court to reasonably infer that any specific individual was responsible" and does not sufficiently plead the "who"). Here, the CAC suffers from this precise infirmity. Rather than identify *any* individual who engaged in the alleged "misrepresentations and omissions," all of Plaintiffs' Consumer Fraud Claims merely identify "Igloo" as the alleged "who." *See* CAC ¶¶ 155-157 (DCFA claim); ¶¶ 230-254 (CLRA claim); ¶¶ 255-271 (FAL claim); ¶¶ 272-286 (UCL claim); ¶¶ 287-299 (MCPA claim); ¶¶ 300-309 (MMPA claim); ¶¶ 310-320 (ICFA claim); ¶¶ 321-327 (IDTPA claim). As set forth above, that is not sufficient to satisfy Rule 9(b). Accordingly, all of Plaintiffs' Consumer Fraud Claims must be dismissed as insufficiently pled.

---

265 (FAL claim alleging that Igloo made "misrepresentations and omissions"); ¶ 281 (UCL claim alleging Igloo "committed fraudulent business acts"); ¶ 295 (MCPA claim alleging Igloo made "omissions and misrepresentations"); ¶ 306 (MMPA claim alleging Igloo made "misrepresentations and omissions"); ¶ 314 (ICF claim alleging Igloo engaged in "deception, fraud, false pretense…."); ¶ 324 (IDTPA claim alleging Igloo made allegedly false "representations and omissions").

2.  <u>Plaintiffs Have Not Adequately Pled Igloo's Pre-Sale Knowledge</u>

Each of Plaintiffs' Consumer Fraud Claims require that the defendant have knowledge of the alleged defect prior to sale. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012); *Utica Nat. Ins. Grp. v. BMW of N. Am., LLC*, 45 F. Supp. 3d 157, 162-63 (D. Mass. 2014); *Johnsen v. Honeywell Int'l Inc.*, 2016 WL 1242545, at *3 (E.D. Mo. Mar. 29, 2016); *Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 753 (N.D. Ill. 2023). As such, the failure to provide "facts demonstrating [the defendant's] pre-sale knowledge of the [alleged] Defect" requires dismissal of these claims. *Diaz*, 693 F. Supp. 3d at 440 (D. Del. 2023) (dismissing claims grounded in fraud, including as to four consumer fraud statutes, for failure to plead pre-sale knowledge). As the Court articulated in *Diaz*, a plaintiff who fails to plead facts that support a plausible inference of pre-sale knowledge "cannot satisfy the pleading requirements of Rule 9(b) for the Fraud-Based Claims relating to any actionable omissions, concealments, or misrepresentations." *Id.*[11]

Here, the latest date that any Plaintiff purchased a Cooler was July 2023. *See* CAC at ¶¶ 60, 66, 75, 83, 90, 96. Thus, Plaintiffs must plead facts plausibly establishing that Igloo had knowledge of the alleged defect no later than July 2023. They do not. Instead, they plead facts that have absolutely no bearing on Igloo's alleged knowledge in July 2023 or earlier. In particular, Plaintiffs point to only two alleged facts to support their assertions of knowledge: (1) the existence of twelve undated and unidentified consumer complaints, and (2) a redesign that occurred in 2024. CAC ¶¶ 241, 264. Neither is sufficient to plausibly establish Igloo's pre-sale knowledge as of July 2023.

As to the twelve complaints, those suffer from a host of deficiencies. First and foremost,

---

[11] To the extent Missouri and Illinois only require pre-sale knowledge for omission-based claims, that should have no practical consequence here because Plaintiffs have not identified *any* representations on Igloo's part claiming that the handle of the Coolers do not pose a pinching hazard. Thus, despite summarily referring to both alleged misrepresentations and omissions, the reality is that Plaintiffs are pursuing an omission-based claim only.

they are all undated. Indeed, Plaintiffs do not allege that even one of these complaints was received prior to July 2023. As many courts have held, "[w]ithout additional allegations indicating when these complaints were submitted, the Court cannot infer that those complaints revealed the … Defect such that Defendants could be said to have known about the existence of the defect prior to the sale or lease of the [product]." *Snowdy*, 2024 WL 1366446, at *20 (D.N.J. Apr. 1, 2024).[12] Second, a mere twelve complaints—out of a population of more than *one million coolers*—do not remotely constitute an "unusual number of complaints, such that the manufacturer would be on notice of a specific problem." *Diaz*, 693 F. Supp. 3d at 435; *see also Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1168 (C.D. Cal. 2022) ("Forty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints."); *Elfaridi v. Mercedes-Benz USA, LLC*, 2018 WL 4071155 at *5 (E.D. Mo. Aug. 27, 2018) ("Twelve monitored complaints of glass breakage are insufficient to infer defendants' knowledge of a defect affecting thousands of vehicles."). Third, Plaintiffs do not provide any detail about any of the complaints—much less details sufficient to put Igloo on notice of the "Defect." Generic complaints that do not "expressly 'identify or describe the defect alleged'" do not give rise to a plausible inference of pre-sale knowledge. *Diaz*, 693 F. Supp. 3d at 432. Accordingly, for any of these reasons, the complaints do not plausibly establish Igloo's pre-sale knowledge.

As to the post-sale 2024 redesign, that is equally insufficient. Again, Plaintiffs must show

---

[12] *See Wilson*, 668 F.3d at 1148 ("[U]ndated customer complaints" do not provide "a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect *at the time of sale*."); *Utica Nat. Ins. Grp.*, 45 F. Supp. 3d at 157 ("[Because] the dates of those complaints and their relationship to this particular recall [were] uncertain," "the court is not convinced that Utica has alleged facts sufficient to infer that pretermitted knowledge of the defect accompanied this particular recall."); *In re Rust-Oleum Restore Mktg., Sales Practices & Products Liab. Litig.*, 155 F. Supp. 3d 772, 816 (N.D. Ill. 2016) (complaints only establish pre-sale knowledge where the plaintiff "allege[s] dates" for them).

that Igloo had pre-sale knowledge—*i.e.*, knowledge dating to before July 2023. Plaintiffs cannot demonstrate knowledge of an alleged defect that *preceded* the sale of Plaintiffs' Coolers based on events that *post-dated* those sales. In fact, it is for this precise reason that courts "will give post-sale complaints no weight, as they logically could not provide pre-sale knowledge." *McMahon v. Volkswagen Aktiengesellschaft*, 2023 WL 4045156, at *12 (D.N.J. June 16, 2013); *see also Sweeny v. Toyota Motor Sales, U.S.A., Inc.*, 2023 WL 4681567, at *4 (C.D. Cal. June 13, 2023) (post-sale complaints are "irrelevant to determine whether [the defendant] knew of the Windshield Defect at the time of sale to any Plaintiff"). Accordingly, Igloo's post-sale redesign is also incapable of establishing its alleged pre-sale knowledge.

Outside of these two immaterial factual allegations, Plaintiffs have not identified a single fact to support their allegations of pre-sale knowledge. All they are left with then are conclusory allegations of knowledge, which are plainly insufficient at the pleading stage. *See, e.g.*, *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013) ("[C]onslusory allegations are insufficient to establish Toyota's knowledge, and concealment, of the HID headlamp defect."); *Maugain v. FCA US LLC*, 2023 WL 1796113, at *10 (D. Del. Feb. 7, 2023); *Spera v. Samsung Elecs. Am., Inc.*, 2014 WL 1334256, at *7 (D.N.J. Apr. 2, 2014). Accordingly, for this additional reason, the Consumer Fraud Claims must be dismissed as inadequately pled.

### B.    The Delaware Consumer Fraud Claim Must Be Dismissed Because There Is No Conduct Alleged to Have Occurred in Delaware

The DCFA was designed "to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce *in part or wholly within this state*." *Marshall v. Priceline.com Inc.*, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006) (emphasis in original) (citing 6 *Del. C.* § 2512). "As such, the courts have consistently ruled that the DCFA is only applicable if the fraudulent conduct occurs within

Delaware." *Id*. Where no such conduct is alleged in the complaint, the claim is due to be dismissed. *Id*.; *see also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006); *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988).

Here, as in the above cases, Plaintiffs have not alleged any fraudulent conduct that occurred in Delaware. In fact, Plaintiffs have not alleged *any connection whatsoever* between Igloo and the State of Delaware as it pertains to the alleged conduct in this case. The Plaintiffs did not purchase or pay for their Coolers in Delaware. They did not incur any type of physical harm in Delaware. They did not incur any out of pocket costs in Delaware. They did not see any marketing materials or advertisements in Delaware. They do not allege that Igloo made any business decisions in Delaware (much less decisions pertaining to the Coolers). And they do not even reside in Delaware. At most, all Plaintiffs have alleged is the mere fact that Igloo is incorporated in Delaware and that there are unnamed and unidentified putative class members in Delaware. Neither is sufficient. *See Chudner v. TransUnion Interactive, Inc.*, 2010 WL 11710658, at *1 n.1 (D. Del. Mar. 4, 2010) ("Mere incorporation in Delaware does not trump the DCFA's standing requirement."); *Marshal,* 2006 WL 3175318, at * 2 (it is not sufficient to claim that a putative class "must include thousands of Delaware residents, and thus fraudulent transactions must have occurred within the State," if "these Delaware residents are unidentified and the fraudulent acts alleged to have been committed are not specified."). Given the lack of connection between Delaware and the allegedly fraudulent conduct, the DFCA claim must be dismissed.

## C.    Trainor Cannot Pursue a Massachusetts Consumer Protection Claim

Similar to the DFCA, a claim under the MCPA requires that "the alleged unfair method of competition or the unfair or deceptive act or practice occurred *primarily and substantially within the commonwealth*." Mass. Gen. Laws ch. 93A, § 11 (emphasis added). Indeed, this is a "prerequisite to any [MCPA] claim." *Pro. Sports Servs. FI OY v. Grossman*, 770 F. Supp. 3d 394,

399-400 (D. Mass. 2025) (dismissing claim where the mere fact that some conduct occurred in Massachusetts was not tantamount to primary and substantial occurrence in Massachusetts). "The applicable standard is not 'some acts,' but rather, whether in their totality, the facts establish" Massachusetts as the "center of gravity" for the relevant conduct. *Evergreen Partnering Grp. v. Pactiv Corp.*, 2014 WL 304070, at *4 (D. Mass. Jan. 28, 2014).

Here, Trainor has not established—and cannot establish—that the alleged deceptive acts occurred primarily or substantially in Massachusetts. In fact, she cannot establish that *any* of the alleged deceptive acts occurred in Massachusetts. As noted *supra*, Trainor did not purchase or pay for her Cooler in Massachusetts. She did not incur any type of physical harm in Massachusetts. She did not incur any out of pocket costs in Massachusetts. And she does not allege that Igloo made any business decisions—much less committed any of the alleged deceptive acts—in Massachusetts. As such, Trainor cannot come close to establishing that Massachusetts is the "center of gravity" for the alleged conduct. Accordingly, her MCPA claim must be dismissed.

## III.    THE BREACH OF WARRANTY CLAIMS FAIL ON MULTIPLE GROUNDS

### A.    The Express and Implied Warranty Claims Fail Because the Alleged Defect Did Not Manifest During the Warranty Period

To bring a claim for breach of express warranty under the applicable state laws,[13] a plaintiff must plead that the alleged defect manifested during the warranty period.[14] The same is true of a

---

[13] With respect to choice-of-law, the court must "must apply an individualized choice of law analysis to each plaintiff's claims." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996). As such, Igloo cites to the laws from all states that could potentially apply to each of the Plaintiffs' claims. This includes: (a) California, where Zannettino, Castellano, Nguyen and Baragan purchased and paid for their Coolers and also where they reside; (b) Illinois, where Riffle purchased and paid for her Cooler and also where she resides; (c) Missouri, where Trainor purchased and paid for her Cooler, and (d) Massachusetts, where Trainor resides (although, for the same reasons stated in Section I(C), Massachusetts law would not apply here).

[14] *See Long v. Hewlett-Packard Co.*, 316 F. App'x 585, 586 (9th Cir. 2009) ("Under California law, time limits in express warranties are effective at limiting the coverage of the warranty to

claim for breach of implied warranty.[15] As the court in *McGee v. Mercedes-Benz USA, LLC* explained, "'[i]n asserting a warranty claim … it is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product *actually exhibited the alleged defect*.'" 612 F. Supp. 3d 1051, 1061 (S.D. Cal. 2020) (emphasis in original). Here, both the express and implied warranty periods are one year.[16] As such, given that the alleged "Defect" in this case is defined as a "tow handle that can pinch consumers' fingertips against the cooler," (CAC at ¶ 4), Plaintiffs must plead that the tow handle pinched a consumer's fingertip within a year of purchase. *See, e.g.*, *Gentek Bldg. Prods., Inc. v.*

---

[15] defects that manifest themselves during the specified time period."); *N. Ins. Co. of N.Y. v. Silverton Marine Corp.*, 2010 WL 2574225, at *2 (N.D. Ill. June 23, 2010) ("Under Illinois law, a plaintiff cannot bring an action for breach of express warranty when the complained of defect manifests after the warranty's expiration."); *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 86 (Mo. App. 2011) (referring to "the requirement [under Missouri law] that an alleged defect must have manifested itself" to adequately state an express warranty claim); *Garick v. Mercedes-Benz USA, LLC*, 2019 WL 3815178, at *4 (D. Mass. Mar. 29, 2019) (dismissing express warranty claim in part because plaintiff did not allege a "'manifestation' of the defect" during the warranty period).

[15] *See Campos v. Polaris, Inc.*, 2024 WL 1816945, at *3 (C.D. Cal. Mar. 5, 2024) ("To state a claim for breach of implied warranty of merchantability under the Commercial Code and the Song-Beverly Act, a plaintiff must allege, among other things, that the product actually manifested a defect that is so basic that it renders the product unfit for its ordinary purpose."); *Tokar v. Crestwood Imports, Inc.*, 177 Ill. App. 3d 422, 432 (1988) ("Under these cases, plaintiff cannot base an action for breach of … implied warranties limited to one year after purchase on defects manifesting themselves after that period."); *Hope*, 353 S.W.3d at 90 (implied warranty claims require "*actual manifestation* of a defect"). While Massachusetts does not require defect manifestation for an implied warranty claim where the plaintiff "had a justifiable expectation of being able to continue using [a product] that [was] unreasonably unsafe," that is not the case where the defect can "*never manifest[] itself*" in the future. *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 295 (D. Mass. 2009) (emphasis in original). Here, given the existence of the Replacement Handle, that is precisely the case.

[16] *See* CAC at ¶ 171 n.25 (hyperlink to Express Warranty providing that the warranty period for hardside coolers is one-year and further stating that any implied warranties "are also limited to the durations indicated below"); *see also Ocampo v. Apple Inc.*, 2022 WL 767614, at *5 (N.D. Cal. Mar. 14, 2022) (U.C.C. § 2-316, which has been adopted, in relevant part, in California, Illinois, Massachusetts, and Missouri, "permits manufacturers to limit the duration of implied warranties to the duration of their express warranties if such limitation is clear and conspicuous.").

*Sherwin-Williams Co.*, 2005 WL 6778678, at *11 (N.D. Ohio Feb. 22, 2005) (a defect only manifests once it "caused some harm to person or property, even if the product in question contains a latent defect that has manifested in other, identical products"); *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 327 (6th Cir. 2025) (a defect does not manifest if it has only caused "economic loss" without further injury). Plaintiffs do not plead these allegations.

As to Zannettino, Trainor, and Riffle, they do not allege that their Coolers pinched anyone at any time. As to Castellano, he alleges that his son experienced pinching issues "while on a camping trip" that occurred "several months" before the Recall—meaning sometime in 2024, which is more than a year after his 2022 purchase. *Id.* at ¶¶ 66-70. Finally, as to Nguyen and Barragan, they summarily allege that they each "began experiencing pinching issues … almost immediately after purchasing [their Coolers]." *Id.* at ¶¶ 77, 85. Yet, neither alleges the month or year when these issues began or that they began within one year of purchase. Thus, they have not adequately pled that the defect manifested within the warranty period. *See, e.g.*, *Hardt v. Chrysler Grp., LLC*, 2015 WL 12683963, at *11 (C.D. Cal. Mar. 16, 2015) ("Unlike Plaintiffs' other allegations, which at minimum state the month and year during which Plaintiffs noticed symptoms of the Transmission Defect, Plaintiffs' only allegation that purportedly falls within the one-year period provides no such identifying information."). Because no Plaintiff has established that the "Defect" manifested within the one-year warranty periods, the warranty claims must be dismissed.

**B.    The Express Warranty Claims Fail Because Plaintiffs Never Presented the Coolers for Repair Nor Did Igloo Ever Fail to Repair Them**

Under all relevant state laws, an express warranty claim requires that (i) the buyer present the product to the seller for repair within the warranty period, and (ii) the seller failed to repair the

product in accordance with the warranty.[17] Thus, to survive dismissal, Plaintiffs must plausibly allege that they (i) presented their Coolers to Igloo for repair within the one-year warranty period, and that (ii) Igloo then failed to repair their Coolers in accordance with the express warranty. Plaintiffs allege neither. First, Plaintiffs do not—and cannot—allege that they ever presented their Coolers to Igloo for repair. Indeed, none of the Plaintiffs ever filed a warranty claim with Igloo pursuant to the terms of the express warranty (much less within the one-year warranty period).[18] Moreover, with the exception of Castellano, none of the Plaintiffs even applied for the Replacement Handle. For this reason alone, the express warranty claims must be dismissed.

Second, Plaintiffs also do not—and cannot—plausibly allege that Igloo ever failed to repair their Coolers in accordance with the warranty. Igloo's express warranty requires that it "repair the product free of charge … if the product proves defective under the terms of the warranty." *Id.* ¶ 171 n. 25 (hyperlink to express warranty). Here, Igloo has offered to provide consumers with a free Replacement Handle to repair the "Defect." *Id.* ¶¶ 50-53. Plaintiffs do not claim that the Replacement Handle fails to repair the "Defect" or that there is still a risk of pinching once the Replacement Handle is installed. *See id.* ¶ 53. Thus, as pled, Igloo has done precisely what the express warranty requires—it has offered to repair the product free of charge. Any conclusory allegations claiming otherwise are readily defeated by these specific contradictory facts. *See Lind*

---

[17] *See Orichian v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322, 1333-34 (2014) (California Commercial Code); *Anderson v. Samsung Telecomm's Am., LLC*, 2014 WL 11430910, at *4 (C.D. Cal. Oct. 20, 2014) (Song-Beverly Act); *Darne v. Ford Motor Co.*, No. 13-cv-3594, 2015 WL 9259455, at *4 (N.D. Ill. Dec. 18, 2015) (Illinois law); *McCabe v. Ford Motor Co.*, 720 F. Supp. 3d 14, 23-24 (D. Mass. 2024) (Massachusetts law); *Midwest Printing, Inc. v. AM Int'l, Inc.*, 108 F.3d 168, 172 (8th Cir. 1997) (Missouri law).

[18] As specified on the hyperlink to the express warranty that is included in the CAC, consumers should "use [Igloo's] warranty claim form" and "submit a warranty service request" in the event their product "fails due to defects in material or workmanship and falls within the guidelines of the Warranty Policy." CAC at ¶ 171, n. 25.

*v. New Hope Prop., LLC*, 2010 WL 1493003, at \*6 (D.N.J. Apr. 13, 2010) (conclusory allegations "actually contradicted by the[] factual allegations" are insufficient to render a claim "plausible"). Accordingly, for this additional reason, all of the express warranty claims must be dismissed.

### C.    The MMWA Claim Fails for Lack of an Underlying Breach of Warranty

The MMWA "provides a [federal] cause of action for express and implied warranty claims under state law." *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 691 F. Supp. 3d 1113, 1122 (N.D. Cal. 2023). Because MMWA claims are coextensive with state law, they "stand or fall with … express and implied warranty claims under state law." *Shoner v. Carrier Corp.*, 30 F.4th 1144, 1146 (9th Cir. 2022); *see also Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 767 (N.D. Ill. 2022) ("The federal warranty claims [under the MMWA] in this case rise and fall with plaintiffs' state-law claims."); *Bush v. WellPet, LLC*, 534 F. Supp. 3d 179, 184 (D. Mass. 2021). "Thus, in the absence of any surviving state law warranty claim, the MMWA claims necessarily fail." *Id*. Here, as discussed *supra*, Plaintiffs cannot maintain any express or implied warranty claim under applicable state law. Thus, they also cannot maintain any express or implied warranty claim under the MMWA. The MMWA claim must therefore be dismissed as a matter of law.

## IV.    THE UNJUST ENRICHMENT CLAIMS FAIL ON MULTIPLE GROUNDS

### A.    Plaintiffs Have an Adequate Remedy at Law

Unjust enrichment is an equitable remedy that is only available when there is no adequate remedy at law.[19] Thus, courts routinely dismiss unjust enrichment claims where an express warranty exists that covers the subject matter in question because the warranty provides the

---

[19] *Zapata Fonseca v. Goya Foods Inc*., 2016 WL 4698942, at \*7 (N.D. Cal. Sept. 8, 2016); *Miller v. Lewis Univ*., 553 F.Supp.3d 678, 687 (N.D. Ill. 2021); *Barnia v. Kaur*, 646 F. Supp. 3d 154, 168 (D. Mass. 2022); *May v. Makita U.S.A., Inc*., 2023 WL 417487, at \*6 (E.D. Mo. Jan. 26, 2023).

plaintiff with an adequate remedy at law.[20] As the court in *Van Zeeland* aptly observed, "[a] party whose contractual expectations were not realized may not make an end run around contract law by pursuing an unjust enrichment theory." 532 F. Supp. 3d at 573.

Here, Plaintiffs assert an unjust enrichment claim against Igloo arising from the alleged "Defect" in their Coolers. CAC at ¶ 207. However, Plaintiffs simultaneously assert a breach of express warranty claim against Igloo arising from this same alleged "Defect"—claiming they and Igloo "formed a contract" that their Coolers would be "free from defects in material or workmanship under normal use and service." *Id*. at ¶ 171. As such, Plaintiffs have an express warranty claim that provides them with an adequate remedy at law. The unjust enrichment claim must be therefore dismissed as a matter of law.

### B.    Igloo Did Not Unjustly Retain Any Benefit Plaintiffs Provided to Them

To adequately plead a claim for unjust enrichment, a plaintiff must allege facts showing that the "defendant received and unjustly retained a benefit at the plaintiff's expense." *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023).[21] Importantly, the claim does not arise merely because one person has been enriched at another's expense; rather, it "arises when the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained.'" *Russell*, 680 F. Supp. 3d at 1133. Indeed, "there can be no unjust enrichment if the parties receive what they intended to obtain." *Sparks v. PNC Bank,* 400 S.W.3d 454, 460 (Mo. Ct. App. 2013). Thus, courts will dismiss unjust enrichment claims where the allegations do not show

---

[20] *Van Zeeland v. Rand McNally*, 532 F. Supp. 3d 557, 573 (N.D. Ill. 2021); *Falk v. Nissan N. Am., Inc.*, 2018 WL 2234303, at *10 (N.D. Cal. May 16, 2018); *Gisairo v. Lenovo (United States) Inc*., 516 F. Supp. 3d 880, 894 (D. Minn. 2021); *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F. Supp. 3d 274, 293 (D. Mass. 2018).

[21] *See also White v. Cadkey Corp.*, 2019 WL 5588954, at *8 (D. Mass. July 8, 2019); *Sparks*, 400 S.W.3d at 460; *Sudicky v. Allied Tube & Conduit*, 1999 WL 982422, at *2 (N.D. Ill. Oct. 22, 1999).

that the benefit was *unjustly* retained.[22]

Here, Plaintiffs have pled no facts demonstrating that Igloo unjustly retained any benefit at Plaintiffs' expense. While Plaintiffs may have paid money to retailers for their Coolers that may have indirectly benefitted Igloo in some manner, whatever benefit Igloo tangentially retained was not unjust because it conducted the Recall and offered to provide Plaintiffs with a free and effective Replacement Handle. Indeed, the Replacement Handle was paid for entirely by Igloo and allows Plaintiffs to use their Coolers safely as intended. Thus, in fact, Igloo has provided Plaintiffs with precisely what they intended to obtain—a safe cooler that can capably cool their food and beverages. Accordingly, any benefit Igloo has retained was done so justly and with an adequate legal basis. This precludes Plaintiffs from proceeding with any claim for unjust enrichment.

Of note, in the recall context, courts have held that unjust enrichment claims may not proceed based on claims that the plaintiff "will have to spend additional time and money to have their [product] repaired and that they have incurred damages for loss of time of use of the [product]." *Humphries v. Harley-Davidson Inc.*, 2025 WL 1836703, at *4 (D.S.C. July 3, 2025). As set forth in *Humphries*, "[t]hose damages are not recoverable on an unjust enrichment claim." That is precisely the case here. At most, Plaintiffs raise speculative and theoretical concerns about a 2-3 week wait time and the need to install the Replacement Handle themselves. As these concerns are not even capable of demonstrating a concrete injury—much less damages that are recoverable on an unjust enrichment claim—their complaints do not provide a plausible basis for this claim.

## V. PLAINTIFFS HAVE NOT PLED FACTS CAPABLE OF SUSTAINING THEIR PUNITIVE DAMAGES CLAIM

In various places throughout the CAC, Plaintiffs purport to seek punitive damages against

---

[22] *Id*. at 1133-34.; *White*, 2019 WL 55888954, at *8; *Sparks*, 400 S.W.3d at 460.

Igloo. *See* CAC at ¶¶ 309, 320, p. 58. To seek punitive damages under the laws of the relevant states, Plaintiffs must demonstrate "that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences." *Perez v. Auto Tech. Co*., 2014 WL 12591484, at *3 (C.D. Cal. Apr. 18, 2014).[23] Moreover, to plead a viable claim for punitive damages in the Third Circuit, the complaint must meet the *Twombly* and *Iqbal* federal pleading standards. *See e.g.*, *Hook v. Whiting Door Mfg. Corp.*, 2016 WL 3676812, at *3 (W.D. Pa. July 6, 2016).

Here, Plaintiffs do not come close to satisfying the federal pleading standards for a punitive damages claim under the laws of the relevant states. Pursuant to the pleading standards and applicable state laws, Plaintiffs must plead facts plausibly showing that Igloo was aware of an unreasonable risk of pinching and intentionally chose not to do anything about it. However, as discussed at length in Section II(A)(2) *supra*, Plaintiffs have not pled facts any such facts. At most, Plaintiffs cite to undated consumer complaints and a post-sale redesign—neither of which plausibly establish Igloo's awareness of any danger at the time of sale. Accordingly, Plaintiffs' punitive damages claim must be dismissed as insufficiently pled.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should dismiss the Consolidated Class Action Complaint in its entirety and enter any other relief it deems just and proper.

---

[23] *Sutherland v. Elpower Corp.*, 923 F.2d 1285, 1291 (8th Cir. 1991) (Missouri law providing similar); *Kopczick v. Hobart Corp.*, 308 Ill. App. 3d 967, 974 (1999) (Illinois law providing similar); *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 621 n.13, 623-24 (1994) (Massachusetts law providing similar).

Respectfully submitted,

**COZEN O'CONNOR**

*/s/ Kaan Ekiner*
Hugh J. Marbury (#7427)
Kaan Ekiner (#5607)
1201 North Market St., Ste. 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com
hmarbury@cozen.com

-and-

Erica Rutner (*Pro Hac Vice*)
Michael Puretz (*pro hac vice*)
1801 N. Military Trail, Suite 200
Boca Raton, FL 33431-1810
(561) 245-6120
erutner@cozen.com

John A. Bertino (*Pro Hac Vice*)
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202) 912-4800
jbertino@cozen.com

*Attorneys for Defendant Igloo Products Corp.*

Dated: November 20, 2025